Kichardson, J.,
delivered the opinion of the court:
No objection is raised by the defendants to the claimant’s ■rights to institute and maintain this action as the sole legatee ■ and devisee of William P. Moore, jr., deceased, who was the *378 origiual owner of the property, real and personal, which is the subject of this suit. The estate of said deceased has been fully settled, and all his property and rights of action, including those involved in this proceeding, have passed to the present claimant.
The first claim is for the rent of lands and houses taken possession of and leased as abandoned property in a State in rebellion, under the provisions of the Act July 2, 1864, (13 Stat. L., p. 375, §§ 2, 3,) by an agent of the Treasury Department, appointed under the Act March 12, 1863, (12 Stat. L., 820.) This last-mentioned act, which was the first enacted, did not apply to real estate, but was clearly restricted to personal property, which alone could be “collected and sold.” By section 1 the Secretary of the Treasury was to appoint a special agent or agents to receive and collect all abandoned and captured property in any State or Territory of the United States designated as in insurrection against the lawful government of the United States by the Proclamation of the President of July 1,1862, and by section 2 any of the goods or property received or collected by such agent or agents might be appropriated to public use or forwarded to any place of sale within the loyal States; and the proceeds of all sales were required to be paid into the public Treasury.
A right of action was given to loyal owners of such property so collected and sold to recover the proceeds thereof by the following clause of section 3 :
“And any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after th e suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims, and on proof, to the satisfaction of said court, of his ownership of said property} of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive the residue of such proceeds, after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
The Act July 2, 1864, provides, in section 2, “ that in addition to the captured and abandoned property to be received, collected, and disposed of, as provided in said act, [of March 12, 1863,] the said agents shall take charge of and lease, for periods *379 not exceeding twelve months, the abandoned lands, houses, and tenements within .the districts therein namedand, in section 3, “ that all money arising from the leasing of abandoned lands, houses, and tenements, or from sales of captured and abandoned property, and sold in pursuance of said act or of this act, [* * * after deducting expenses,] shall be paid into the Treasury of the United States.” But no right of action is expressly given in this act to loyal owners of real estate to recover the rents thus collected and paid into the Treasury, and none exists, unless that which is contained in the former act, and which we have cited above, applies to rents so collected under the later act. And we are of opinion that it does so apply, and that the petitioner is entitled to recover. We can conceive of no reason why the United States should return to loyal owners the proceeds of abandoned personal property and withhold from them the rents and income of abandoned lands and tenements, and we think no such distinction is warranted by a proper construction of the statutes.
The act of 1864 is in addition to that of 1863. It added another class of property to that which the agents appointed by the Secretary of the Treasury were to take possession of. The two acts, being on the same subject, must be construed together, and when so construed the right of action given in the first act applies to the second precisely the same as though it had been repeated therein, and gives to loyal owners the right to recover the proceeds of rents collected from abandoned lands paid into the Treasury by such agents. This principle of construction is suj)-ported by judicial authority. In Holbrook v. Nichols (36 Ill., 161) the Supreme Court of Illinois held that an amendment of a former act operated precisely as if it had been added to the prior act as to proceedings subsequent to the later statute. In Rogers v. Bradshaw (20 Johns., 744) the point was taken that a remedy given by a statute of the legislature of New York, passed in 1817, did not apply to acts done under a statute upon the same subject-matter passed in 1820. But the court of errors held otherwise, and the chancellor, in delivering the opinion, says: “All statutes, said Lord Mansfield, (Doug., 20,) which are in ■pari materia are to be taken together, as if they were one law; and in many instances a remedy provided by one statute will extend to cases arising on the same subject-matter under a subsequent statute.” The Supreme Court of New York adopted the same *380 principle in Rexford v. Knight, (15 Barb., 627,) wherein it was decided that the State became seized of the same estate in lands taken under the Act April, 1819, for the continuation of the Erie Canal, as it had in those appropriated by virtue of the previous Act April, 1817, for the construction of said canal, although the title of the State to lands taken was expressly provided for only in the act first passed.
To the second claim for the proceeds of rosin taken possession of by an agent of the Treasury Department, sold, and the proceeds paid into the Treasury, no defense in law is set up, and the petitioner is entitled to recover the amount set forth in the second finding. The property was collected under the provisions of the Act March 12,1883, and sold in the place where it was collected, as authorized by an amendment of that statute in the Act July 2, 1864.
The third claim is for rosin and turpentine captured on land by the combined naval and military forces of the United States, at the time of the capture of New Berne, in March, 1862. It is found that Commodore Rowan, about that time, shipped a large quantity of rosin and turpentine, seized by said forces at New Berne, to New York and Philadelphia — much more, to each of those places, than was taken from the claimant’s testator— and that the property so shipped to New York was adjudged, by judicial proceeding, to belong to one Ellis. Wo therefore conclude that the latter was not the rosin and turpentine owned by the claimant’s testator, and that his property, the proceeds of which are here claimed, was among that which was sent to Philadelphia. When this property arrived in Philadelphia, in April or. May, 1862, it was libeled in the district court of the eastern district of Pennsylvania as maritime prize. That property captured on land 'is not maritime prize, but, since the passage of the Act March 12,1863, should be turned over to agents of the Treasury Department, to be disposed of as therein provided, was decided by the Supreme Court in Mrs. Alexaner’s Case, (1 Wall., 404.) And the district court in Pennsylvania, as to the property which is the subject of this suit, not regarding it as maritime prize of war, ordered that the proceeds arising from the sale be paid into the United States Treasury. In Cook's Case, (9 C. Cls. R., 388,) where a district court had taken jurisdiction of a libel for the condemnation of property captured on land by the navy, had condemned it as prize of *381 war, and ordered it to be sold, and the proceeds paid, one half to the captors and the other half to the United States Treasury, this court held, on the authority of Mrs. Alexander’s Case, that the proceedings of condemnation were void, and that the loyal owner could recover the proceeds of the sale of the property. That decision would be decisive in favor of the petitioner in this case were it not for an important and material difference in the facts of the two cases. In Goolc’s Case the property was captured and seized in October, 1863, after the Abandoned or captured property Act of that year had gone, into operation, and by the sixth section of that act it was made the duty of officers and privates of the military forces, and officers, sailors, and marines of the naval forces, to turn over all such property to the agents of the Treasury Department.
In three cases this court has held that an action would lie to recover the net proceeds of abandoned property, captured before the Abandoned and captured property Act (of March 12, 1863) was passed, by virtue of the Act July 2,1864, (13 Stat. L., •375:) Barringer’s Case, (3 C. Cls. R., 358,) Minor’s Case, (6 O.Ols. R., 393,) and Terry & Game’s Case, (8 C. Cls. R., 277.) But in •each of these cases the property was captured or seized after the passage of the Act July 17,1862, (12 Stat. L., 5S9,) and name within the description of property mentioned in that act, •and so by virtue of the Act July 2,1864, (13 Stat. L., § 3, 376,) was held to be included in the provisions of the first section of •said Act March 12,1863, and as to which, by the third section, •a right of action to loyal owners to recover the proceeds thereof is given.
But in the case at bar the rosin and turpentine of the claimant’s testator were captured March 2, 1862, were taken1 into a State not in rebellion, and libeled by the civil authorities in April or May, 1862. This was two months at least before the passage of the Act July 17, 1862, making provision for the seizure and disposition of the property of persons engaged in rebellion against the Government of the United States, and this property came within none of the provisions of that act. That •act described the property of certain official persons, of whom the claimant’s testator was not one, and of others who, being •engaged in armed rebellion, should not, within sixty days after public warning and proclamation made by the President, cease to aid, countenance, and abet the rebellion ; and it authorized *382 tbe seizure, condemnation, and confiscation of such property, for which special provisions were therein made. This act clearly related to property thereafter seized, and did not affect the rights of the United States to property previously captured and to the proceeds of property seized and sold as booty and paid into the public Treasury. The act offered an inducement to persons in rebellion to return to their allegiance and save the property which they still had in possession, but did not offer to them money in the Treasury arising from property which they liad previously lost or forfeited by the events of the war. It will be noticed that the Act July 2,1864, § 8, does not in terms extend the whole Act March 12,1803, to the description of property mentioned in the two previous acts, but extends only the first section, authorizing- the collection of property by the Treasury agents, and the sixth section, directing officers and soldiers to turn over to such agents all captured property. The-third section of the act of 1863, which gives the right of action upon which the claimant relies, is not extended in terms; and if it applies at all to any other property than that specified'in the first section, it is because the Treasury agents did receive or should have received such other under some other provision of law. That they did receive this property is not claimed, and that they could not have received it is apparent. When the act of 1863 was passed, the property was not in a State in rebellion, but in a loyal State, nor was it in the control of the military or naval authorities, but was in the custody of the civil authorities of Pennsylvania; and when the Act July 2,1864,. was passed, extending the act of 1863, as we have mentioned,, the property had been sold and the title was vested in other parties, and the money had been paid into the Treasury.
The construction contended for by the claimant would lead to the result that we should apply to this property now in controversy the third section of the Act March 12,1863, which is not in terms extended, while the first section of that act, which is extended, and through which alone the third section becomes operative, if at all, could not possibly apply to it.
In our opinion the Act July 2, 1864, was not intended to be-so far ■ retroactive in its operation as to give to parties a right to recover from the public Treasury all the money that had been paid into it from the beginning of the war on account of captured property seized before Congress made any regulations in. *383 relation to it. The property now claimed .was booty, which the courts have held not to belong to the officers and men engaged in its capture, but to belong to the sovereign; the proceeds of which go to the public Treasury, unless the sovereign allows it to the individual captors.
We recognize the !< humane maxims of the modern law of nations which exempt private property of non-combatant enemies from capture as booty of war,” (Klein’s Case, 7 C. Ols. B., 243, 13 Wall., 128,) and the constitutional provision that Congress has power to “ make regulations concerning captures on land and water,” (Constitution, art. 1, sec. 8, par. 11.) But until Congress makes the necessary regulations and confers the authority, this court has no jurisdiction to compel the United States to refund money obtained contrary to those maxims. Before Congress made regulations and enacted laws in relation to the seizure and disposition of the enemy’s property, all property so seized became vested in the United States by the rigorous rules of earlier warfare, which were justified on the ground that the power and the resources of the enemy were weakened and those of the captors strengthened thereby. And now that Congress has made some for returning the proceeds of captured and abandoned property, in specified cases, this court, with its limited power, can take no jurisdiction beyond that which is clearly and expressly given by statute.
The conclusion which we have reached is that the claimant is entitled to recover on the first and second findings $13,497.50, for which amount judgment in her favor will be entered.