Drake, Ch. J.,
delivered the opinion of the court:
In the year 1865 the claimant presented to the Department of War a claim against that Department for compensation'for the services of the steamer Winnisimmet under a charter-party entered into between the claimant and an officer of the Quartermaster’s Department on the 17th of December, 1862. The period of time covered by the service was from April 14, 1863, to August 2, 1863.
The Third Auditor reported in favor of the payment of $5,854.58 to the claimant, and the Second Comptroller concurred in and approved the report of the Auditor, and on the 14th of November, 1876, the Second Comptroller admitted and certified that sum to be due the claimant.
Thereafter, on the 28th of November, 1876, thé Secretary of War, under the authority of section 1063 of the Revised Statutes, transmitted the claim to this court, to be here proceeded in according to law.
The claimant has not filed any petition, but moves the court to dismiss the case and return the papers to the Secretary of War, not because the claim is not in its subject-matter and character one which that officer was authorized by that section to transmit hither for judicial examination and decision, but because it had already been passed upon favorably by the ac *321 counting-officers of the Treasury; after which, it is claimed, the Secretary had no authority so to transmit it.
The question thus presented is not anew one here. It was fully considered in the Delaware River Steamboat Company's Case, (5 C. Cls. R., 55,) where it was held that a head of a Department may transmit a claim to this court after the Auditor and Comptroller have settled it and certified a balance due to the claimant. We have reconsidered the.matter, and adhere to the views there expressed. As was held in Brigth's Case, (6 C. Cls. R., 118,) the reference of the claim to us gives usj urisdibtion of it and the claimant, which we should proceed to exercise, unless there be some other objection than the fact of the previous action of the Auditor and the Comptroller.
The claimant urges that a valid objection appears on the face of the papers transmitted, in the fact that the claim accrued in the year 1863, and • is barred by the tenth section of the Act March 3, 1863, (12 Stat. L,, 765,) which declared “that every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement of the claim be filed in the court, or transmitted to it under the provisions of this act, within six years after the claim first accrues.”
As this provision was in force when this claim accrued, it would present a complete bar to an action voluntarily brought thereon in this court after the lapse of six years from August 2, 1863. But as the claimant has not brought an action, but is sent here against his will, the question does not arise in that form. Had a petition been filed in the ordinary way, it would be for the defendants to insist on the statutory bar; but here the case is reversed, and we have the claimant seeking to escape the jurisdiction of the court by urging that the Secretary of War had no legal right to transmit the claim here, because in this forum it was already barred by the terms of that act. This presents a question, not before raised, and which requires careful consideration.
When the Act March 3,1863, was passed there were but two prescribed ways for bringing claims into this court: first, by the voluntary act of the claimant in filing a petition here; and, secondly, by the reference of a claim to the court by one or the other .house of Congress. (10 Stat. L., 612.) In regard to the latter, the second section of that act'provided “ that all petitions *322 and bills, praying or providing for the satisfaction of private claims against the Government, founded upon any law of Congress, or upon any contract, express or implied, with the Government of the United States, shall, unless otherwise ordered by resolution of the house in which the same are presented or introduced, be transmitted by the Secretary of the Senate or the Clerk of the House of Representatives, with all the accompanying documents, to the court aforesaid.”
When, therefore, this same act, iu the tenth section, above cited, declared that every claim should be barred “ unless the petition * * * be filed in the court, or transmitted to it under the provisions of this act within six years after the claim first accrues,” it referred to a transmittal under the authority of the second section, and restricted the power to claims which had first accrued within six years previous to the transmittal.
Such was the state of the law when by the seventh section of the Act June 25, 1868, (15 Stat. L., 75,) the power was given to the head of a Department to transmit claims to this court. The following are the terms in which that power was conferred :
“ That it shall and may be lawful for the head of any Executive Department, whenever any claim is made upon said Department involving disputed facts or controverted questions of law, where the amount in controversy exceeds three thousand dollars, or wherethe decision will affect a class of cases or furnish a precedent for the future action of any Executive Departmentin the adjustment of a class of cases, without regard to the amount involved in the particular case, or where any authority., right, privilege, or exemption is claimed or denied under the Constitution of the United States, to cause such claim, with all the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims, and the same shall be there proceeded in as if originally commenced by the voluntary action of the claimant. * * * Provided, however, That no case shall be referred by any head of a Department unless it belongs to one of the several classes of cases to which, by reason of the subject-matter and character, the said Court of Claims might, under existing laws, take jurisdiction on such voluntary action of the claimant.”
It cannot fail to arrest attention that while the subject-matter and character of the claims which may be transmitted to this court under this section, and the circumstances authorizing *323 tbeir transmittal, are defined and prescribed, there is nothing there fixing a time within which they shall be transmitted, either with reference to the date of the accruing of the claim or to that of its presentation to the Department. The only reference to time is in the words “whenever any claim is made upon said Department;” which would seem to import that a claim might be sent at any time during its pendency before the Department as an unsatisfied demand, no matter when it accrued.
This view is strengthened by what would seem to be a quasi legislative interpretation of this section, to be found in the Revised Statutes, where all the provisions of the previous acts relating to the jurisdiction and proceedings of this court are collated and arranged .together.
Let it be remembered that both the provisions authorizing the Secretary of the Senate and the Clerk of the House to transmit petitions here, and also that establishing a bar by limitation, are in the above-cited act of 1863. When, therefore, the latter provision declared that “ every claim shall be forever barred, unless the petition * * * be filed in the court or transmitted to it under the provisions of this act within six years after the claim first accrues,” it could have no possible reference to transmittal by a head of a Department, for no such authority was conferred upon any such head until more than five years thereafter.
When, therefore, in revising the statutes in 1873, all the provisions applicable to this court were arranged together, and we find m .the same chapter, first, the provision authorizing the Secretary of the Senate and the Clerk of the House to transmit claims ; and, secondly, that authorizing the head of a Department to transmit claims; and, thirdly, the provision in regard to limitation; if the last were embodied there in its original terms, as found in the act of 1863, it might very plausibly, if not conclusively, be urged that the words “ transmitted to it under the provisions of this act” include every transmittal provided for in that chapter, whether by a house of Congress or by a head of a Department. But, as if to exclude such a conclusion, the language is changed in the revision so as to read, “Every claim * * * shall be forever barred unless the petition * * * is filed in the court, or transmitted to it by the Secretary of the Senate or the Cleric of the House of Representatives as provided by law, within six years after the claim first *324 accrues;” thus confining the operation of the provision, so far as transmitted claims are concerned, to those transmitted by one' or the other house of Congress, and wholly omitting any reference to those transmitted by heads of Departments. Though this may not be entitled to be regarded as a conclusive legislative interpretation of the former statutes, it may at least be considered as indicating an intent to retain in the revision the pre-existing condition of the law.
But there are othe.r considerations tending toward the same conclusion which are worthy of mention.
The section in question authorizes the head of a Department to transmit a claim hither, “where the decision will affect a class of cases, or furnish a precedent fpr the future action of any Executive Department in the adjustment of a class of cases.” How could such a ■ decision be made here if all consideration of the questions involved in the claim could be stopped in.limine by a plea of limitation ? It certainly could not have been the intention of Congress to plant such a barrier in the way of obtaining a decision, which itself intended to have the dignity and force of “ a precedent for the future action of an Executive Department.”
Again, a claim may be transmitted here by a head of a Department “ where any authority, right, privilege, or exemption is claimed or denied under the Constitution of the United States.” The legislature rightly deemed that the decision of grave questions of constitutional law was not within the sphere of an Executive Department, but legitimately belonged to the judiciary; and so provided a way in which the former should transfer such questions to the latter, where ultimately, on appeal, the judgment of the court of last resort could be pronounced as a final and conclusive construction of the Constitution. If this could be prevented by the interposition of the bar of limitation, then this modaof obtaining a judicial decision of matters of the highest import, which can be no otherwise fitly decided, may be made wholly nugatory.
Again, to hold that a claim transmitted by a head of a Department may be met here by the bar of limitation is to put it in the power of that officer to defeat the claim finally and hopelessly, before both the executive and the judicial departments of the Government, by the simple and convenient process of removing it from the former to the latter, for the very purpose of se *325 curing its defeat here by limitation. In point of fact that was done in this case. Among the papers sent hither by the Secretary of War is a report upon this claim, made to him by a judge-adyocate, which concludes with these words: “It is therefore advised that the case be sent to the Court of Claims, where the Attorney-General can interpose the statute of limitation to these renewed or continued demands.” This report was approved by the Secretary of War; and so the very case is presented of a head of a Department sending a claim here, not for our decision upon its merits, but for the express purpose of having us debar the claimant by limitation from any such decision. We do not believe that it was the intention of the legislature thus to defeat claims sent here by a head of a Department.
Again, it is well known that, with the utmost diligence which a claimant may exercise, it is often more than six years before final departmental action can be obtained upon his claim. In this case the claim was pending in the Department from January, 1865, till November, 1876, nearly twelve years. It is not in the power of a claimant to avoid these delays, however he may urge action on his claim; he must wait for action until the proper officers reach their conclusion. Presumably they act as soon as circumstances permit. But it is possible, though we would not say probable, that while leading the claimant to suppose they .were moving as rapidly as practicable, they might delay action with the intent of keeping him in the Department until the bar of limitation would be effectual here, and then send him here for the express purpose of having his claám defeated by that bgr. It is not to be supposed that the legislature intended to authorize such a mode of defeating claims which, when judicially examined, might be found just and well sustained by competent evidence.
Again, if when the head of a Department transmits a claim to us the Attorney-General may throw it out of court by setting up the statutory bar, the extraordinary spectacle is presented of a conflict between two Executive Departments, one endeavoring to thwart the other in the exercise of an authority expressly conferred by law. It is not admissible to infer a right in any Department to institute such a conflict. On the contrary, the whole theory of our executive system, infers the exact opposite. If such right is claimed, it should be clearly shown ; which has *326 not been done in tbis case. The very fact of tbe existence of this court, with power to decide between the Government and citizen claimants, excludes the idea of a jurisdiction acquired by us through the act of one Department being wrenched away by the action of another.
Again and finally, as was held in the Delaware River Steamboat Company’s Case, above cited, this power was given to the heads of Departments mainly in the interest and for the protection of the United States. A long-pending dispute had existed between some of those heads and the accounting-officers of the Treasury, as to their respective powers over claims and accounts. The question was submitted successively to Attorneys-General Wirt, Berrien, Taney, Butler, Crittenden, Johnson, Cushing, Bates, and Stanbery, by all of whom it was held that the auditing and controlling of accounts were subject to the superior supervision of some appropriate head of a Department. In the opinion of Mr. Stanbery, delivered in 1866, the previous ones are referred to. (12 Opinions of Attys. Gen., 43.) In view of these opinions, and to settle the dispute by legislation, the Act March 30, 1868, (15 Stat. L., 54,) was passed, declaring that the Act March 3, 1817, (3 Stat. L., 366,) “shall not be so construed as to authorize the heads of Departments to change or modify the balances that may be certified to them by the Commissioner of Customs or the Comptroller of the Treasury, but that such balances, when stated by the Auditor and properly certified by the Comptroller as provided by that act, shall be taken as final and conclusive upon the executive branch of the Government, and be subject to revision only by Congress or the proper courts: Provided, That the head of the proper Department, before signing a warrant for any balance certified to him by a Comptroller, may submit to such Comptroller any facts in his judgment affecting the correctness of such balance, but the decision of the Comptroller thereon shall be final and conclusive, as hereinbefore provided.” This act is substantially embodied in section 191 of the Revised Statutes.
It will be observed that after its passage, though it provided that the decision of the Comptroller might be reviewed by the proper courts, there was no way prescribed for the head of a Department, however firm his conviction that a claim ought not to loo paid5 to bring it under sixob. review. To meet "tbis difíi-culty, as we suppose, the same Congress, in the seventh section *327 of the Act June 25,1868, authorized the heads of Deparments to transmit certain descriptions of claims here. As under no circumstances could there ever arise before the Comptroller a question of limitation, and as his decision would necessarily be upon the merits of the claim, it is clear to us that the judicial review which the head of the Department was authorized to invoke by transmitting the case here, was designed to Toe a review of the claim upon its merits, in fact and in law, and that it was not intended that that kind of review should be precluded by a statute of limitation not in its terms applicable to that particular case, and the effect of which in many cases would be to frustrate, by a new issue, the effort of the superior officer to protect the Government from a claim which he believed to be unjust.
In no view does it appear to us that a claim transmitted to this court by the head of a Department can be defeated by limitation. The claimant’s motion to return the papers in this case to the Department of War must, therefore, be denied, and the case be allowed to pi'oceed according to law.
At the same time, in the case of Reybold v. The United States, the following opinion was read:
Dbaee, Oh. J.,
delivered the opinion of the court: ~
In this case the claimants make a motion similar to that passed upon in the case of the Winbisimmet Company, and base it on the proposition that the Secretary of War had no authority to transmit the claim to us after the period of six years had elapsed after the claim first accrued. The only difference between this case and that is, that in this the claimants, after the claim was transmitted to this court by the Secretary of War, filed a petition thereon as required by law and the rules of the court.
Upon the grounds set forth in the previous case the motion is' overruled.
And at the same time, in the case of Hart v. The United States, the following opinion was read:
*328 Dkaee, Ch. J.,
delivered the opinion of the court:
The claim in this case accrued in 1861, and was transmitted to the court by the Secretary of War in 1873.
The claimant filed a petition, to which the defendants pleaded the statute of limitation. To this plea the claimant demurs.
Upon the grounds taken in the case of the Winnisimmet Company, the demurrer must be sustained.