Davis, J.,
delivered the opinion of the court:
This claim was transmitted to the court by the Secretary of War on the 13th November, 1873. The claimant rests his claim upon five vouchers so transmitted by the Secretary, and upon other documentary evidence from the War and Treasury Departments. Most of the transactions took place between March 3, 1861, and June 21,1861, in Texas cr on its borders. The claimant relies upon vouchers certified by officers of the Army in the usual form to establish the performance of the services and the delivery of the supplies sued for and the worth of the same.
It has been the practice in this court to regard a voucher in the official form, certified in the usual way by the properly qualified officer, as prima facie evidence of the facts stated in it. But we have never held it to be conclusive evidence of those facts. It is always open to the government to contradict it. And in a case like the present, where some of the transactions took place during the fermentation just preceding the resort to arms and the remainder after the war began, and two of the certifying officers went into the insurgent service, and where the claimant’s intestate was a purveyor to the enemies’ forces, and was at the same time supplying the United States, trying to earn an honest penny out of both, the court should scrutinize the evidence to support a prima facie case with some care.
The first claim rests upon the evidence of the certificate of Lieutenant Jackson. It is for 30,000 pounds of flour delivered at Fort Bliss on the 3d March, 1861. A voucher for it was audited and approved at the Treasury in May, 1861, and a requisition issued for payment. The requisition was never paid. It *425 was probably recalled, as it bas disappeared. On tbe other band, it appears by tbe abstract of purchases made by Lieutenant Jackson for Fort Bliss, during tbe first quarter of 1861, that on tbe 3d March there was but one purchase made, which was for 32,000 pounds of flour, and that this claim was paid on the 27th March, 1861. It is possible that this fact might be explained. If we did not find insuperable objections in law on the other grounds to a recovery, we might be willing to give a new hearing for the purpose of an explanation. Under the circumstances we have put all the facts in our finding, and have found as a resulting fact that Ilart delivered to the United States at Fort Bliss, in March, 1861, no flour except the 32,000 pounds, for which he has been paid in full. If the Supreme Court, on appeal, holds that we are mistaken as to the law,, enough facts will be before it to enable it to shape its mandate as it may deem just to the claimant.
Thfe claim certified to in Jackson’s second .voucher is open to a similar objection and has been treated in a similar way.
The claim in the voucher certified to by Grayson is a claim for errors in former vouchers. It is open to grave objections as to its appearance and form, and purports to have been certified by Grayson after he was relieved and after he .had ceased to be a certifying officer. We have also in this case stated the facts in detail, and our conclusions as a resulting fact.
As to the supplies referred to in the two vouchers certified by Treacy, there is some collateral evidence that they were received by the defendants. We have also put this documentary evidence in the findings. So far, however, as the proof rests upon Treacy’s certificate, it is inadmissible, for that certificate is absolutely void. It was made after Hart had joined the rebels and was supplying their forces, which were gathered in Texas for the purpose of invading New Mexico. It was not within the power of a loyal citizen within the United States to give to an enemy who was at that time within the enemy’s lines, an evidence of debt which should be valid on the return of peace. The document on its face is void. The same may be said of Grayson’s certificate.
Some of the claims are open to a further fatal objection. By the joint resolution of March 2, 1867, which is embodied in the Devised Statutes, section 3480, Congress resolved—
“That until’othorwise ordered it shall be unlawful for any *426 officer of the United States Government to pay any account, claim, or demand against said government which accrued or existed prior to the 13th day of April, A. D. 1801, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion; or in favor of any person who, during said rebellion, was not known to be opposed thereto, and distinctly in favor of its suppression; and no pardon heretofore granted or hereafter to be. granted shall authorize the payment of such account, claim, or demand until this resolution is modified or repealed: Provided, That this resolution shall not be construed to prohibit the payment of claims founded upon contracts made by any of the departments where such claims were assigned or contracted to be assigned prior to April 1,1801, to creditors of said contractors, loyal citizens of loyal States, in payment of debts incurred prior to March 1,1861.”
The alleged purchases set forth in both of Jackson’s and in one of Treacy’s vouókers were prior to April 13,1861. Those referred to in Grayson’s took place in April, 1861, but whether before or after the 13th does not appear, except by conjecture. A large part of the claims sued for came within the date named in that resolution. They were in favor of a person who promoted, encouraged, and sustained the rebellion. They were not assigned prior to April 1, 1861. Those claims therefore come directly within the terms of the act.
The claimant alleges that Hart was pardoned. The allegation was not traversed and the fact is not proved; that is, however, immaterial. If proved it would not authorize officers of the government to pay these claims. A ]iardon restores to civil rights, to the enjoyment of property, to the right to sue, to the right to do military duty, to the right to exercise the franchise, and to hold office, but it does not confer the right to take money from the Treasury of the United States, except as appropriated by Congress. “No money shall be drawn from the Treasury but in consequence of appropriations made by law.” (Constitution, sec. ix, paragraph 7.) When Congress enacted that money appropriated should not be paid on a certain class of contracts to persons who had promoted the rebellion, the pardon of such persons would not have enlarged the powers of the ministerial officer if the statute had continued silent. But the statute provides for the contingency and says that the pardon shall not be construed to authorize the payment. It is entirely within the power of Congress to indicate a class of persons who shall not be paid out óf general appropriations, but shall come to Congress for their relief.
*427 ■ The Secretary of War, being precluded from paying this claim, could not transmit it here to seek its payment under the general appropriations made by Congress to pay the judgments of this court. . That would be making the Treasury do indirectly what Congress has said it cannot do directly. Were we to render judgment in the claimant’s favor on such claims, we should invite the officers of the Treasury to do an act, under cover of our judgment, which Congress plainly intended that they should not have authority to do in any contingency.
We are not required to determine whether we should be authorized to render judgment against the government on this class of claims if the claimant had appeared here on his own motion. We confine ourselves to this: that when the head of an executive department is forbidden by law to pay a.claim, there can arise no disputed fact, no controverted question of law, nothing in which our decision can affect a class of cases, nothing in which it can furnish a precedent for the future action of an executive department, nothing in which any authority, right, privilege, or exemption can be claimed or denied under the Constitution of the United States, to warrant the transmission of the claim to this court, or to confer upon this court a jurisdiction, derived through the department, which is expressly denied to the department. The duty of the executive officer is to deny the claim irrespective of all such consideration. He has no power to assist the claimant to any other remedies.
The court is therefore without jurisdiction of the claims which come within the statute; and for that reason as to those claims, and for the reasons already given as to the others, the judgment of the court is that the claimant’s petition be dismissed.