*701 'OPINION.-
Richardson, J.,
delivered the opinion of the court:
The findings of fact show that the claimant did not own the cotton the proceeds of which he claims in this action, and his petition must be dismissed.
With the disposal of this case all the business of the court under the Act of March 12, 1863, entitled uA.n act to provide for the collection of abandoned property, and for the prevention of frauds in insurrectionary districts within the United States” (12 Stat. L., 820), is brought to a close unless there should be a new trial in the only case under the act now pending on appeal in the Supreme Court.
This circumstance suggests the propriety and usefulness of placing upon record some important facts in relation to the statute and the business which has been done in accordance with its provisions.
THE ACT.
The question has often been mooted, in case a bill is presented to the President within the last ten days of a session so that he cannot have the full ten days allowed by the Constitution in which to approve or to- teturn it'to that House in which it originated, whether or not he may approve it after the adjournment or expiration of the Congress, so as to give effect to it as a valid law.
The Constitution provides, in Art. 1, sec. 7, as follows:
Every bill which shall have passed the House of Representatives and the Senate, shall, before it become a law, be presented to the President of the United States: if he approve he shall sign it, but if not he shall return it, with his objections, to that House in which it shall have originated, who shall enter the objections at large on their journal, and proceed to reconsider it. * * *
If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress by their adjournment prevent its return, in which case it shall not be a law
The uniform practice has been, from the first organization of the Government to the present time, for the President not to approve after the adjournment of Congress,any bills which he omitted to approve during the session, with the single exception of the Abandoned or Captured Property Act.
*702 This act was passed during the very last days of the Thirty-seventh Congress, by the Senate March 2 and by the House of Representatives March 3, 1863. It was not approved when that Congress ceased to exist by constitutional limitation, on the 4th of March, 1863.
The parchment roll in the State Department shows that President Lincoln, in affixing his name to it eight days after Congress had adjourned sine die, wrote with his own hand, “Approved March 12, 1863,” so that there can be no doubt as to the correct date of approval. It was President Lincoln’s custom to write, himself, the date of approval in all cases, and not leave that duty to a cleric.
The validity of the statute as a law has never been drawn in question. The executive officers proceeded to act under its authority immediately after its approval, and so continued without objection from any quarter as to their right. The Court of Claims toolc jurisdiction of cases brought under the following clause of section 3:
Any person claiming to have been the owner of any such abandoned or captured property may at any time within two years after the suppression of the rebellion prefer his claim to the proceeds thereof in the Court of Claims; and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive the residue of such proceeds, after the deduction of any purchase-money which may have been pa'd, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.
The Supreme Court of tbe United States also took jurisdiction of appeals in those cases and acted upon them as brought under a valid law.
Congress, too, -recognized its validity by ainending it and extending its provisions in the third section of the Act of July 2, 1864, ch. 125 (13 Stat. L., 376) (Moore’s Case, 10 C. Cls. R., 375), and by reciting in Revised Statutes, § 1059, among the cases in which the Court of Claims has jurisdiction, “all claims for the proceeds of captured or abandoned property, as provided in the Act of March 12, 1863, entitled ‘An act to provide for the collection of abandoned property, and for the prevention of frauds in insurrectionary districts within the United States.’”
Moreover, Congress inserted in Revised Statutes, § 3689, a permanent annual, appropriation “ for the return of proceeds from the sale of captured and abandoned property in iusurrec- *703 tionary districts to the owners thereof, who may, to the satisfaction of the Court of Claims, prove their right to and ownership of said property”; and the judgments of the Court Claims in such cases have been regularly paid by the Treasury Department.
Thus we find that the legislative, executive, and judical departments of the Government tacitly and without question have acquiesced in the validity of the statute thus approved.
We recite these facts for their historical interest, without expressing any opinion as1 to the effect of the approval of a bill by the President after the Congress which passed it has adjourned or expired. The question is now no longer of any prac tical importance as to that act, since all litigation under its provisions has been completed.
business under the act.
Claimants were allowed two years after the suppression of the rebellion in which to prefer their claims in this court. It was held by the Supremo Court that the date of the suppression of the rebellion was fixed by the proclamations of the President, the first issued April 2, 1866 (14 Stat. L., 811), declaring the war to be closed in Virginia, .North Carolina, South Carolina, Georgia, Florida, Mississippi, Tennessee, Alabama, Louisiana, and Arkansas, and the other, issued August 20,1866 (14 Stat. L., 814), proclaiming that the rebellion was at an end, and that peace, order, and tranquillity and civil authority existed in and throughout the whole of the United States of America. (The Protector, 12 Wall., 700.)
Parties, therefore, had the right to bring their actions at any time within two years after the latter date, when the rebellion was entirely suppressed.
The first case was filed March 8,1864. The following table shows the result of the whole business :

This- table includes some cases which, were referred by special acts of Congress after the time for bringing suits under the original act had expired, in one of which the sum of $58,419.20 was recovered.
*704 THE ABANDONED OB, CAPTURED PBOPEETT MONEY.
Before tbe passage of the Abandoned or Captured Property Act there had existed almost from the beginning of the war an executive system for the collection of property captured from the public enemies or found abandoned by them in the States in rebellion, devised and carried on conjointly by the War and Treasury Departments. After the passage of that act not only the proceeds of the property collected by agents under its authority, bat also the proceeds of all other property of like kind, previously or subsequently collected by the Army, were treated as captured or abandoned property money. (Goodman v. United States, 14 C. Cls. R., 547.)
The following statement shows the condition of the account, how much money has been received, what part has been drawn and for what purposes, and by what authority such part has been paid out.
Whole amount; of the proceeds of captured and abandoned property, about.....$31,722,466 20
Paid for cost of collecting, sale, and other expenses...-. $6,551,000 00
Transferred to Freedmen’s Bureau. 243,000 00
Deposited as internal-revenue taxes and commercial-intercourse fees. 1,406,000 00
Released to claimants by Secretaries Chase, Fessenden, and McCulloch... 2,550,675 24
- 10,750,675 24
Covered into the Treasury under Resolution of March 30, 1868, No. 25, § 1 (15 Stat. L., 251), and previously. 20,971,790 96
Paid under special relief acts of Congress.... $290,906 32
Paid on judgments against Treasury agents under Act of July 27, 1868, ch. 276, § 1 (15 Stat. L., 243). 64,557 27
Paid on judgments of the Court of Claims under the Abandoned or Captured Property Act of March 12, 1863. 9,833,423 16
Paid to claimants by the Secretary of the Treasury under Act of May 18, 1872, ch. 172, § 5 (17 Stat. L., 134). 195,896 25
Disbursed for expenses under Resolution of March 30,1868, No. 25, § 3 (15 Stat L., 251). 75,000 00
Total 10,459,783 00
Balance 10,512,007 96
Note. — Since the decision of this case a claim has been filed under a special act of Congress of March 3, 1883, ch. 111 (21 Stat. L. ), for the proceeds of cotton of Sterling T. Austin, alleged to have been taken by the military and civil authorities of the United States during the years 1863, 1864, 1865, in the States of Louisiana and Texas.
There are now remaining on the docket of this court no eases •presenting further claims on this móney.