Bichardson, J.,
delivered the opinion of the court:
Two separate claims in these cases were referred to the court by the Secretary of the Treasury, June 22,1883, pursuant to the provisions of section 2 of the Act of March 3, 1883, chapter 116 (22 Stat. L., 485), commonly called the “Bowman Act.”
The defendants have made a motion to dismiss for want of jurisdiction apparent on the face of the petitions filed by the claimants, because, as they allege, the claims are barred by Bevised Statutes, section 1069, and so by terms of section 3 of the act of March 3, 1883, are expressly excluded from the jurisdiction of this court.
Bach petition, filed August 3, 1883, sets out that under contract with the defendants, the claimant cut and stacked a certain quantity of hay upon the Winnebago Indian Beservation in the months of August and September, in the year 1868, and that immediately after cutting and stacking the same he caused his claim therefor to be filed in the Office of Indian Affairs, and has repeatedly requested payment of the same, which has as often been refused; that the papers therein were transferred to the Treasury Department for further consideration, and by that department were transmitted to this court under the provisions of the second section of the act of March 3, 1883.
The provision relied on, in support of the defendants’ motion, is found in section 3 of the act, and is as follows:
“Nor shall the said court have jurisdiction of any claim, against the United States which is now barred by virtue of the provisions of any law of the United States.”
*24 That the claims in question were barred by a law existing when that act was passed the defendants’ counsel contend is shown by Revised Statutes, section 1069, which is:
“Every claim against the United States, cognizable by the Court of Claims, shall be forever barred, unless the petition setting forth a statement thereof is filed in the court within six years after the claim accrued.”
These claims first accrued in September, 1868, and so were barred within the meaning of that word as used in Revised Statutes, section 1069, but it does not therefore necessarily follow that they were barred within the meaning of the act of 1883.
The word “barred,” like many other words, has a variety of significations, differing according to the connection in which it is used. The language of a statute is to be interpreted with reference not only to the general subject to which it relates, but also to the particular matter which the legislature appears to have had in hand, and the object which it seems to have aimed to accomplish, as manifested by other parts of the act; and words are not always to be restricted to their signification as independent words, but may be qualified by their surroundings and connections. (Farden’s Case, 13 C. Cls. R., 347; affirmed on appeal, 99 U. S. R., 10; Beckwith’s Case, 16 C. Cls. R., 262.)
It was said in Lyde v. Bernard (1 M. & W., 113) by Parke, B.: “ Words may be construed in a sense different from their ordinary one when the context requires it, or when the act is intended to remedy some existing mischief, and such a construction is required to render the remedy effectual. For we must always construe an act so as to suppress the mischief and advance the remedy.” The same doctrine was laid down by the Barons of the Exchequer in Hey don’s Case (3 Rep., 7), and has frequently been repeated in the judicial decisions of this country, both State and national. (Sedgwick’s Statutory and Constitutional Law.)
When Congress passed the Act of March 3, 1863 (12 Stat. L., 765), by the tenth section of which the provisions of Revised Statutes, section 1069, were first enacted, it was dealing wholly with cases in which the Court of Claims was authorized to enter judgment against the United States for the amount found due, payable out of any general appropriation made by law for the payment and satisfaction of private claims; and the *25 cases to which the limitation of that section applied could be commenced only by the voluntary petition of claimants, or by transmission by the Clerk of the House or Secretary of the Senate, as provided in the second section of said act. Congress was not considering the subject of the settlement of claims before the several departments. When, therefore, it provided that “ every claim cognizable by the Court of Claims shall be forever barred, unless the petition * * * be filed in the court * * * within six years after the claim first accrues,” it meant barred from the general jurisdiction of the court to enter judgment against the United States, and not absolutely barred from consideration everywhere, and especially not from examination and settlement in the departments where claims were and still are mostly settled. Such was the interpretation practically adopted immediately on the passage of the act, and continued without objection to the present time in the departments. Claims have uniformly been taken up there, audited, adjusted, and settled without reference to the bar enacted in the Court of Claims act.
That interpretation has been sanctioned by this court and by the Supreme Court. Where cases have been transmitted' to .this court under the provisions of Revised Statutes, section 1063, the court has held that the statute of limitation did not apply if the cases were such as the department might have examined and settled, although they were barred "from consideration by the court upon the voluntary petition of the claimants. (Winnisimmet Co. Case, 12 C. Cls. R., 319; Lippitt’s Case, 14 id., 148; Green’s Case, 18 id., 93.)
The Supreme Court took the same view in a case where the claim had been presented to a department within six years after it first accrued; although referred to the Court of Claims by the head of the department under section 1063 of the Revised Statutes, long after that period of time had expired. (Lippitf’s Case, 100 U. S. R., 663.) Thus we have the authoritative decision of the court of last resort substantially that a claim “forever barred” by section 1069 of the Revised Statutes is only barred from becoming the foundation of a judgment against the United States in this court, on the voluntary petition of the claimant, and that decision is an important guide to us in the interpretation of the act of March 3, 1883.
*26 In section 1093 of the Revised Statutes the word u bar” is so connected with other words as to indicate that it is used in a much broader sense. It- is there enacted that—
u Any final judgment against the claimant on any claim prosecuted as provided in this chapter shall forever bar any further claim, or demand against the United States arising out of the matters involved in the controversy.”
In cases coming within this section the claims are absolutely-barred from consideration in any form by both the judicial and executive branches of the government, and cannot be revived by transmission to this court under the second section of the Bowman Act.
But in our opinion a claim transmitted to the court by the head of a department under that act is not barred within the meaning of the word as there used, unless it appears to have been barred from consideration and settlement in such department. We think it was the object and intention of Congress in passing that act to authorize heads of departments to transmit to this court for judicial examination any claims or matters involving controverted questions of fact or law which could be adjusted and settled in such departments, without reference to the bar against the claimants coming here voluntarily. The circumstances under which the act was passed, and its whole scope, from the title through its several sections, manifestly show that the real mischief to be remedied was the adjustment and settlement by the departments of old and troublesome claims upon ex parte evidence, and the remedy was permission to the heads of departments to transmit such claims to a judicial tribunal as an aid to the proper executive officers in determining the rights of the parties concerned.
The attention of Congress had been called by the íáecretary of the Treasury annually for a series of years to the difficulties experienced in adjusting claims in the departments. In his annual report of 1877 the Secretary thus stated the matter:
a The attention of Congress is called to the laws imposing upon the department the adjudication of a multitude of claims. Its organization is admirably adapted for the investigation and statement of accounts accruing in the ordinary course of current business, but itis not adapted to the investigation of claims long since accrued, and supported in most cases by ex parte affidavits. The department has no authority to cross-examine witnesses, no agents to send to examine into alleged facts, and *27 no facilities such as are in common use by courts to ascertain truth and expose falsehood. It is respectfully suggested that this class of claims not already acted upon be transferred from the Treasury Department, and its business of accounting be confined to current accounts payable from appropriations made within a short period of time.”
In a circular of April 20, 1877, he restates it thus :
“The Treasury Department is admirably organized to pass upon accruing demands upon the government and upon the accounts of disbursing officers. All its machinery and checks are adapted to this duty, and no serious complaint has been, or is likely to be, made of the proper discharge of this duty. But when claims long past due are presented upon ex parte evidence to officers who have no means of calling witnesses, no powers to cross-examine them, no modes of testing the sufficiency of testimony or its credibility, none of the safeguards of an open court of justice, the passage of fraudulent claims is unavoidable.” (McKee’s Case, 12 C. Cls. R., 557.)
It was because the departments had no means of trying in a judicial manner controverted claims pending therein that Congress was asked to provide some other tribunal for their adjudication as an aid to their proper administration. The Bowman Act was passed March 3,1883, to make that provision, and in its very title it is styled “An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the government.”
The evil to be corrected applied to all claims of which the departments had jurisdiction, and the remedy and relief intended would seem to be commensurate therewith. But if the interpretation contended for on the part of the defendants be correct, the departments are to be assisted and aided through this judicial tribunal in cases where the cause of action accrued within six years, but are to have no such assistance in the earlier cases where, by reason of lapse of time, the investigation required must have, become more difficult; in other words, that the departments may be assisted and aided in the settlement of recently accrued cases by a judicial investigation, but must themselves dispose of the very old and most troublesome ones without such assistance. A construction which would lead to such a result, and which would so manifestly defeat the object of Congress is certainly not a reasonable one, and is not to be adopted if the words are capable of any other interpretation more consistent with the general scope of the act.
*28 There are several other provisions of the Bowman Act which, indicate plainly enough that Congress did not intend the word “barred” to be applied to all claims of more than six years’ standing. Such are the following provisions of—
“ Sec. 4. In any case of a claim for supplies or stores taken by or furnished to any part of military or naval forces of the United States for their use during the late war for the suppression of the rebellion, the petition shall aver that the person who furnished such supplies or stores, or from whom such supplies or stores were taken, did not give any aid or comfort to said rebellion, but was throughout that war loyal to the government of the United States, and the fact of such loyalty shall' be a jurisdictional fact;
“And unless the said court shall, on a preliminary inquiry, find that the person who furnished such supplies or stores, or from whom the same were taken as aforesaid, was loyal to the government of the United States throughout said- war, the court shall not have jurisdiction of such cause, and the same shall, without further proceedings, be dismissed.”
All the claims referred to in that section must have arisen during the rebellion, more than six years before the passage of the act, and so were barred from the general jurisdiction of this court upon the voluntary petition of claimants. But many of them might still be settled in the departments, provided they were presented and filed prior to July 1, 1880. (Rev. Stat., §§ 300 A, 300 B; Act of March 3, 1879, § 3, 20 Stat. L., 628, 650.) Section 4 above cited assumes that such claims may be tried in this court, and there is no way by which they can reach the court, except under the provisions of the Bowman Act. That section would be without force if the interpretation contended for on the part of the defendants be correct. Other language of the act, if carefully analyzed, is equally inconsistent with that interpretation.
But there are several classes of cases to which the limitation in section 3 excluding from the jurisdiction of this court “any claim against the United States which is now barred by virtue of the provisions of any law of the United States,” applies consistently with the object of the act as indica ted throughout its provisions, and with its entire language in every part, some of which we will refer to.
Such are claims for unliquidated damages for breach of contract, which the departments have not and never have had jurisdiction to examine and settle. But the Court of Claims
*29 has jurisdiction of them upon the voluntary petition of claimants, provided the petition be filed within six years after the cause of action accrue. (Power’s Case, 18 C. Cls. R., 283.) Unless such claims are presented to this court within six years, they are forever barred from any right of recovery authorized by law.
So also with claims under the abandoned or captured property act. The departments never had any jurisdiction of such claims, and the claimant’s only remedy provided by law was by petition in this court filed within two years after the suppression of the rebellion. (Podge’s Case, 18 C. Cls. R., 700.)
Ontheother hand, claims for refunding internal-revenue taxes can be presented only before the Commissioner of Internal Revenue ; and they must be presented there within two years next after the cause of action accrues. (Rev. Stat., §§ 3220, 3228; Bank of Greencastle Case, 15 C. Cls. R., 225.) Of such claims this court has no jurisdiction, except upon an allowance made by the Commissioner. (Kaufman’s Case, 11 C. Cls. R., 659, affirmed on appeal, 96 U. S. R., 567.) Unless such claims be thus presented within the time allowed the claimant’s remedy is wholly barred.
There are other similar classes of cases, but enough have been mentioned to show to what the bar imposed by section 3 of the Bowman act of March 3,1883, naturally, properly, and consistently applies. (See Act of March 3,1871, ch. 116, § 9, 16 Stat. L., 525; Act of January 9, 1883, ch. 15, 22 Stat. L., 401; 14th Amendment lo Constitution; Act of June 5, 1882, ch. 195, § 3, 22 Stat. L., 98; Art. XI, treaty with France; 1 Supplement Rev. Stat., 634.)
The intention of Congress seems to have been not to resuscitate claims which had previously been forever wholly barred from settlement, and not to open old, outlawed, and dead issues, while it was affording assistance and relief to the departments in the investigations of claims alive and under consideration therein, and of which no way of obtaining a judicial investigation was provided except through the machinery of transmission to this court by the heads of the departments. Congress could not have intended, in our opinion, to destroy in one section a very large part of the assistance and relief which seems to have been the main object of the Bowman act as provided in other sections.
*30 This interpretation gives due force and effect to the word “barred” as used in the act of March 3, 1883, without destroying other important and prominent provisions, and makes the different parts of the act agree with each other so that they may all stand together.
“The good expositor,” says Lord Coke, “makes every sentence have its operation to suppress all the mischiefs; he gives effect to every word in the statute. He does not construe it so that anything should be vain and superfluous, nor yet makes exposition against express words, for viperina est expositio qu<e eorrodit viscera textus, but so expounds it that one part of the act may agree with the other, and all may stand together. For the best expositors of all acts of Parliament, in all cases, are the acts of Parliament themselves — by construction and conferring all the parts of them together.” (Dwarris on Statutes.)
We have held that to enable the court to take jurisdiction of cases transmitted by the heads of the departments, under section 1063 of the Revised Statutes, it must appear that they were such as the departments had authority to settle and adjust therein. (Hart’s Case, 15 C. Cls. R., 414; Green’s Case, 18 C. Cls. R., 93.) The same rule applies to cases transmited to the court by the heads of Departments under the Bowman Act.
In the present cases the petitions set out claims for the payment of hay furnished to the defendants, under contract, in the year 1868, and such claims are clearly within the jurisdiction of the departments to settle and adjust. (R. S., 236; Power’s Case, 18 C. Cls. R., 263.) The department may therefore have the assistance and aid of this court therein by transmission under the act of March 3,1883.
It must be observed that by the transmission of claims to this court by the departments under the Bowman Act the claimants gain no new rights, as the court can enter no judgment in their favor. On the contrary, they are subjected to the proving of their claims by legal and competent testimony, taken in accordance with the rules of judicial proceedings, and this is wholly for the assistance and relief of the departments and for the benefit of the government.
The points involved in this motion have been thoroughly and ably argued on both sides, and the court has given to the questions raised that careful consideration which ■ their importance demands.
*31 In the conclusion reached and the views here expressed the judges are all agreed.
The judgment of the court is that the motion be overruled.
Weldon, J., had not taken his seat when this case was heard, and took no part in the decision.