Davis, J.,
delivered the opinion of the court:
By an act approved September 28, 1850,.swamp and overflowed lands unfit for cultivation were granted to the States^ wherein they were situated, to be drained and reclaimed. These-lands not being definitely located, were in many instance innocently taken up by individuals, who in due course received title therefor from the Land Office. To remedy the difficulties-which necessarily followed these double titles, Congress, in 18.15-[March 2, 1855,10 Stat. L., p. 634), confirmed the patents issued to individuals, and granted to the States the purchase-money received for swamp lands sold, or if the lands had been located by warrant or scrip, then indemnified the States by-giving them the right to locate a quantity of like amount-upon any of the public lands subject to entry at one dollar and a quarter per acre or less.” The States claimed the right under • this act to receive scrip which might be located upon any vacant public lands subject to entry at $1.25 per acre or less, no matter where situated; but Mr. Hendricks, then Commissioner of the General Land Office, declined to issue any indemnity scrip not on its face confined to location within the borders of the State receiving it. His decision was affirmed by Secretary Thompson, and has since been adhered to by succeeding Secretaries of the Interior.
The second ground of complaint is based upon the construction by the Interior Department of an act passed eight days prior to the swamp-land act, and which gave to the State of Illinois,, to aid in the construction of the Illinois Central Bailroad, the even-numbered sections on either side of that road, the odd- *348 numbered sections, retained by the government, being advanced to double minimum price and reserved from sale by the President until 1852. The State claims the swamp lands in these odd-numbered sections, or indemnity therefor, as granted to it by the act of September 28,1850 (the “Swamp Land Act”), notwithstanding the advance in price and- the reservation of the lands by the President from sale or location. Secretary Mc-Clelland, in 1855, decided adversely to this claim of the State, and his ruling has since been regarded by the department as •conclusive.
The question of the jurisdiction and power of this court acting under the Bowman Act (March 3, 1883, 22 Stat. L., p. 485) •upon claims transmitted by the executive departments is met upon the threshold of this case and has been presented by •counsel with great care and ability, both upon the argument of the motion to dismiss and upon the final hearing.
The government cannot be sued without its consent, and may -affix to that consent such conditions as it chooses, any resulting hardship being remediable only by the law-making power. The ■act under which this case is sent here empowers us to consider those matters pending in the executive departments which are transmitted by the heads of those departments, and which are not barred by the provisions of any law of the United States. It is clear that this claim is pending in the Department of the Interior, within the meaning of the act, in so far as to give this court jurisdiction to consider it and reports its findings to the Secretary for his guidance. (Jackson v. The United States, 19 C. Cls. R., 508.)
In the McClure Case (19 C. Cls. R., 23), decided at the last term, the nature and extent of the jurisdiction conferred upon this court by the Bowman Act were fully considered, and the conclusion was reached that section 1093 of the Revised Statoutes operates upon the act, and bars in this court any demand against the government in which a final judgment has been rendered. The result of the reasoning in that case is that the transfer of a claim from one of the departments to this court •does not carry with it an increase of power over the matter in controversy, and if the head of department be himself without jurisdiction or power to aid the claimant, the latter’s legal posi-ion is not bettered by the transfer. The Bowman Act is ex *349 ceptional and peculiar in its provisions, and the jurisdiction conferred by it is very different from that granted by sections 105» and 1063 of the Revised Statutes, being in its nature advisory.
As was said by this court in the McClure Case, the intention of Congress in passing the act “ seems to have been not to rer suscitate claims which had previously been forever wholly barred from settlement, and not to open old outlawed and dead issues, while it was affording assistance and relief to the departments in the investigation of claims alive and undér consideration therein.” The opinion in the case of Jackson (19 0.. Cls. R., 504) also proceeds upon this theory, and closes by directing the clerk to certify to the Secretary of the Treasury,.’ not that the decision made by his predecessor was or was not correct, but that he had “no power to open the claim for readjustment on its merits.” What, then, is the power of the Secretary of the Interior over the case at bar, one branch of which was decided by Secretary Thompson in 1858, and the other by Secretary McClelland in 1855 ?
As early as 1825, Mr. Wirt, then Attorney-General, in a let-' ter to the Secretary of the Navy, said that he had understood it to be a “rule of action prescribed to itself by each administration to consider the acts of its predecessors conclusive as tar-as the Executive is concerned.” The Supreme Court, in the case of the Bank of the Metropolis, decided in 1841 (15 Peters, 401), limited the right of an executive officer to review his predecessor’s decisions “ to mistakes of fact arising from errors of calculation, and to cases of rejected claims in which ¡material testimony is afterwards discovered and produced; in 1849,. Mr. Attorney-General Toucey held (5 Op., 29) that the principle of res judicata applied to claims “ thus deliberately considered and rejected ”; his successor, Mr. Reverdy Johnson (5-Op., 240), ruled that the decision of a Secretary of the Interior, “whether right or not.” could not be overruled by his success sor; and these decisions were followed consistently by other-Attorneys-General, among them Mr. Black (9 Op., 300 and 387), Mr. Stanbery (12 Op., 169 and 356), Mr. Hoar (13 Op., 33 and 226), Mr. Akerman (13 Op., 387), Mr. Bristow (13 Op., 457), and Mr. Williams (14 Op., 275). Even the opinion of Mr. Attorney-General Bates in the Sot Springs Case (10 Op., 61), cited as a departure from this line of authorities, does not seem *350 to be such; but if it be, Mr. Bates retraced bis steps the next .year in the Dart Case (10 Op., 255), wherein he reviewed and followed the opinions of his predecessors.
In 1864 (Lavallette v. The United States, 1 C. Cls. R., 149) this court decided "that, the head of a department cannot, in a matter involving judgment and discretion, reverse the decision and action of his predecessor even in a matter relating to the .general affairs and management of the business of the department” ; and the Supreme Court held, in Stone v. The United States (2 Wall., 535), that one “ officer of the Land Office is not competent to cancel or annul the act of his predecessor ” ; finally, • this court, at the last term, in Jackson’s Case, followed the path so clearly defined by sixty years of consistent rulings, and held that the Secretary of the Treasury could not reopen a claim adjusted by his predecessor.
It is contended on behalf of the claimant, that the decisions' of the Secretaries were in their nature judicial, not administrative, and so beyond their power and jurisdiction; and, further, that the precise limited question now presented has not been •decided, that precise question being (to quote from the brief), "Will the department issue a certificate simply reciting the words of the statute of March 2, 1855, as to authority to locate land in lieu of certain 5,763 acres heretofore located, which was .also sold by the United States, situate in Clay County, Illinois, leaving the legal effect of such certificate to be hereafter tested by submission to some court of competent jurisdiction?”
We cannot agree that the decisions of the Secretaries upon the questions of statutory construction involved in this case were beyond their power to make; it is a necessary daily duty -of administrative, officers to construe-the laws by virtue of which they officially exist, which prescribe their duties and limit their powers. How far .these decisions, necessarily made in the discharge qf official duty, are binding upon others, need .not now be considered, as they clearly are binding upon the successors and subordinates of these officers until reversed by •competent authority, and such authority has not been given to this court by the Bowman Act. The decisions and opinions •already cited in relation to the power of one executive officer to reverse the ruling of his predecessor sprung from questions involving interpretations of the law, and in Jackson’s Case this ■court described the ruling of the Secretary which could not be *351 reopened by bis successor as one upon “ a question of the construction of a statute.”
Nor is the matter presented here so limited, as the complainant contends, or confined to any specific lot of land. The Secretary of the Interior describes it as the “claim of the State of Illinois’ to-locate swamp-land indemnity scrip outside of the State, and to the swamp lands in the odd-numbered sections lying within 6 miles on each side of the Illinois Central Railroad,” and this sub mission cannot be limited or changed by the ■claimant. The Secretary requests the findings of this court not in relation to the Clay County lands alone, but upon the broad question of the right of the State to the lands described or to indemnity scrip not confined to location within the State. Further, the decisions of Secretaries Thompson and McClelland were general in their intention and application, covering all lands within the description of the acts, and, while inchoate as to specific lots until defined, these rulings attached to each section as soon as located and found to fall within the acts of Congress.
It is urged that the adoption of the Revised Statutes created a new state of the law, which brings the questions up as res nova, annulling the prior decisions and making a new grant of lands and indemnity. The Revised Statutes are the legislative declaration of the law on the 1st day of December, 1873, and we can go back of them only to explain ambiguity (United States v. Bowen, 10 Otto, 508); but we cannot see that the enactment of 1874 nullified all rights which had vested prior thereto under the various statutes as theretofore construed by competent authority •, the enactment was for aid and simplicity in the future, and was not intended to tear up the past or to annul all that had gone before.
We are of opinion that the Secretary of the Interior has not authority to reop ■ n the claims of the State of Illinois specified in his letter to this court dated February 13, 1884, and in this view of the case we express no opinion as to the correctness of the decisions made by his predecessors.
The clerk will certify a copy of this opinion to the Secretary of the Interior, for his guidance and action.