Weldon, J.,
delivered the opinion:
This proceeding» involves a dispute betwen B. G-. Jayne, on one side, John Kanski, Edward F. Furton, and Jane Kirk, ad-ministratrix of the estate of Lewis J. Kirk, deceased, on the other, as to who are the informers in the case of T. H. Yetter-lein & Sons, commenced in the District Court of the United States for the southern district of New York. The, matter of the controversy comes to this court by a reference of the Secretary of the Treasury under the provisions of the Bowman Act.
In the year 1869, on the 3d of June, Jayne was appointed special agent of the Treasury Department and commenced the discharge of his duties on the 4th, in the city of New York. At that time Lewis J. Kirk, John Kanski, and Edward F. Burton were connected with customs at the port of New York.
On the 29th of June, 1869, the parties jointly communicated to the collector of customs at New York that T. H. Yetterlein & Sons had defrauded the revenue, by collusion with the weigh-ers, in making short returns of merchandise imported by them, and jointly claimed as informers. Upon the faith of the information communicated by the parties, proceedings were commenced in the United States court, which resulted in judgment in favor of the United States.
Allowing to the informer the compensation provided by law the parties would be entitled to one-fourth of $24,268. Of this sum $735 was paid many years since to Jayne, and about it there is no dispute in this case, the only controversy being as to the rights of the parties in the amount recovered in 1885, amounting to the sum of $21,328, that sum being in the Treasury as the result of the proceedings against Yetterlein & Sons. The question is pending in that Department as to who is entitled to share in the proceeds as informers, and that question is referred by the Secretary to this court for judicial determination and settlement.
In the decision of the issue presented by this case two questions have arisen, first, as to who is the informer; and, second, as to the legal effect of certain proceedings in the Treasury Department, as shown in the findings. The first is mainly a question of fact, the second a question of law. We have care-, fully examined the evidence upon the question of fact, and *314 bave determined, from all the competent testimony in the case, that all the parties become and were informers when the information was communicated to the Government on which the proceedings against Vetterlein & Sons were based.
It is true that the first infortnatian of fraud was communicated to the Government from the individual knowledge and discovery of Jayne; but when the act of information assumed the form of authoritative communication, on which the Government was to base legal proceedings, it was the joint-act of all parties, and was so received and indorsed by the then collector of customs. When the act of information was consummated it embraced the joint rights of all the parties, and gave to each an equal interest in whatever might be the result of such information. The inchoate right of informer became vested in each, to be defeated or'to become consummate upon the result of the proceedings based upon the joint information of all. When their rights became consummate by the decision of the court and the payment of the money, they related back to the time of seizure, and became vested in the fruits of the information furnished to Government on the 29th of June, 1869. (Jones v. Shere, executor, 1 Wheat., 462; Van Ness v. Buel, 4 id., 74; Buel v. Van Ness, 8 id., 312.)
The findings develop the ultimate fact that B. G. Jayne, John Kanski, Edward F. Burton, and Lewis J. Kirk were the informers, and that the parties in this case are to be recognized in the disposition of the fund remaining in the Treasury for distribution, unless by the adjudication and award of a former Secretary the matter has been determined in such a way as to remove the fund beyond the jurisdiction of the present Secretary. It is insisted by the counsel for Jayne that there has been a decision of the former Secretary binding upon the rights of all the parties, and that the present Secretary is without power to consider the question as to who is the informer.
In support of this theory, among other authorities, he cites the case of Jackson v. The United States, decided by this court, reported in the 19th C. Cls. R., 504. It was held in that case that “ a claim or matter is pending” in an Executive Department, within the meaning of the Bowman Act (§2), u when- , ever it is presented to the Department for payment. A pending claim, upon being transmitted to this court by an Executive Department under the Bowman Act becomes a competent *315 matter of jurisdiction, and the Department is to be guided by the decision of the court, although it may be merely that the further consideration of the claim by the Department is unauthorized by law.”
If the facts of this case are analogous to the fact in the Jackson Case, we must find in favor of B. G. Jayne, not because he was the original and only informer, but because there has been such a decision and adjudication of the matter in the Treasury Department as precludes the power of the present Secretary to adjudge any'rights in favor of the other contestants. (United States v. Bank of Metropolis, 15 Pet., 401; Lavaletted Cqse, 1 C. Cls. R., 149; Judiciary Committee of the Senate, 14th June, 1878; The State of Illinois v. The United States, 20 C. Cls. R., 342.)
Whether the facts of this case bring it within the rule of administrative law announced in the Jackson and foregoing cases is the question, submitted to us for decision.
The claimants who are adverse to the petitioner Jayne now ask the Secretary to adjudge and determine their rights; and there is no fact in the record showing that at any previous time any such request was ever made. It is a general principle of law that in order to bind a person by a proceeding he must have been a party to such proceeding by notice in fact or in law, and there is no proof that the parties claiming adversely to Jayne had any notice of any adjustment of the rights of informers under the seizure made upon the faith of the information communicated to the officers of the Government on the 29th of June, 1869. The finding is, they had no notice and were ignorant of any proceedings until long after it had taken place.
In June, 1883, the Treasury, by the Chief of Internal Revenue and Navigation Division, made an investigation of the matter as to who was the informer in the “ Vetterlein frauds,” as between B. G. Jayne and John S. Palmer, and by the finding of that officer, approved by the Secretary of the Treasury, it was awarded that Jayne was entitled to the one-fourth of the net proceeds, but the present claimants had no notification or knowledge of the proceedings. The only question decided by the then Secretary was, that as against Palmer, Jayne was the informer. The present contestants filed no proof and were not heard in defense of their rights under the paper filed by them *316 in 1869. It is recited in the papers pertaining to .the contest between Jayne and Paimer in the Department in 1883:
“But this Department was informed by John S. Palmer in November, 1878, ten years after the claims of the other informers were filed at the custom-house, that he was the informer.”
The papers in the proceeding in the Treasury Department, in which the claim of John S. Palmer was settled against him, are indorsed “ claims of B. G. Jayne et al. and John S. Palmer.”
The question whether Jayne was the sole informer against the other petitioners was not made án issue before the Secretary in 1883; and the only matter decided was that Palmer was not entitled to participate in the fund as informer. The case presented to the present Secretary is different, and upon a very different state of proof. At that time there was nothing in the record but the information filed with the collector of customs; now the parties all appear and submit to the consideration of the Secretary their testimony, and for the first time ask- a decision of the question as to whether they are entitled to share in the fund still in the Treasury belonging to the legal informer in the case of the “ Yetterlein frauds.” Are they not entitled to hearing on the merits of their claim when no intervening right of the Government is involved? In the case of Nancy E. Day, decided, at the present term, this court said:
“ While we have no disposition to qualify or restrict the- doctrine we have heretofore decided in cases like the one at bar, we have no disposition to extend it so as tq include transactions not falling clearly within the law of those cases.” (Nancy E. Day, administratrix, v. The United States, 21 C. Cls. R., p. — .)
The parties are not seeking to disturb the finding of the former Secretary upon the part of the fund affected by that decision, but simply to ascertain the rights of the parties in- a fund still in the jurisdiction of the Government, and in which the United States have no other interest than the correct determination of the question as to who is or are the legal informers. No vested right of the Government is assailed, no . policy of the Department is involved by permitting the parties to show that, in conjunction with B. G. Jayne, they are entitled to participate in equal proportions in the fund still subject to distribution. Upon the question whether there can be a title to an informer’s share, accruing at once to several persons, the *317 court decides, in conformity to the opinion of the Solicitor of the Treasury, that “ the statute does not restrict the Government to the recognition of only one informer in a given case.”
The fact and the law concurring in favor of their claim to participate, it is the conclusion of the court that B. G. Jayne, John Kanski, E. F. Burton, and Jane Kirk, administratrix of Lewis J. Kirk, deceased, are informers in the matter referred in this chse, and that they have a right to participate equally in the distribution of the fund, and the clerk will certify to the Treasury Department a copy of the findings of fact, the conclusion of law, and the opinion of the court.