Campbell, Chief Justice,
delivered the opinion of the court.
By a letter dated February 28, 1913, the Secretary of the Interior gives a history of the proceeding here involved, stating, among other things, that a petition had been filed in the Interior Department by the complainants herein seeking to have the names of the respondents stricken from the roll of Indians on the White Earth Reservation, and further stating that—
“ In view of the serious controversy- that has arisen out of the foregoing proceedings, after hearing, in the department, the attorneys representing the respondents and representatives of the petitioners as to the proper course of procedure to be adopted herein, and because of the important controverted questions of law and fact involved, it has-been deemed wise by this department, with the consent and approval of the representatives of the petitioners and of the respondents as well, to submit all questions arising on the record thus submitted to you, consisting of this letter and Exhibits A to G, inclusive, hereinbefore mentioned, in so far as such questions are material to the determination whether said 86 respondents above mentioned, or any of them, are entitled to have their names retained on the roll of the Chippewa Indians of the White Earth Reservation and to share in the annuities accruing to such Indians. Said record is submitted to you for your findings as to matters of fact and your opinion as to matters of law, together with your conclusion thereon, for the use and benefit of this department in the premises, in accordance with the provisions of section 148 of the act of March 3, 1911, 36 Stat. L., 1087, at page 1137.”
*23 It appears that an attorney from the Department of Justice was designated to represent the complainants, and that the respondents, so far as they appear, were represented by attorneys of their own selection. It appears that a considerable number of the respondents are minors in fact; and whilst all Indians upon a reservation may be regarded as under the guardianship of the Government, it is not made definitely to appear in this case how or by what right the said minors are represented by attorneys of their own selection, the department not having designated anyone to act for them.
The case so transmitted was originally placed upon the general docket of this court March 1, 1913, as “ In the matter of retaining on the rolls of the Chippewa Indians of the White Earth Reservation the names of Benjamin L. Fairbanks and eighty-five others,” but was subsequently changed, on May 6, 1913, to its present title, which is, “ In the matter of the petition of Charles T. Wright et al. for the purification of the White Earth roll.”
When the case came on to be heard the petitioners were represented by an “ attorney, Department of Justice, counsel for petitioners,” and one of the respondents appeared by counsel and filed a motion questioning the jurisdiction of the court. Other persons- respondent appeared by counsel and moved the court to be allowed to take additional testimony for use in the case. This motion was opposed by said attorney for the department, who insisted that the case should be heard upon the record of the evidence taken and such papers and data as appeared in the record or was otherwise in the possession of the department.
The case comes here, as stated in said letter, under the provisions of section 148 of the Judicial Code, reading as follows:
“ When any claim or matter is pending in any of the executive departments which involves controverted questions of fact or law, the head of such department may transmit the same, with the vouchers, papers, documents, and proofs pertaining thereto, to the Court of Claims, and the same shall be there proceeded in under such rules as the court may adopt. When the facts and conclusions of law shall have been found. *24 the court shall report its findings to the department by which it was transmitted for its guidance and action: Provided, however, That if it shall have been transmitted with the. consent of the claimant, or if it shall appear to the satisfaction of the court upon the facts established, that under existing laws or the provisions of this chapter it has jurisdiction to render judgment or decree thereon, it shall proceed to do so, in the latter case giving to either party .such further opportunity for hearing as in its judgment justice shall require, and shall report its findings therein to the department by which the same was referred to said court. The Secretary of the Treasury may, upon the certificate of any auditor or of the Comptroller of the Treasury, direct any claim or matter of which, by reason of the subject matter or character, the said court might, under existing laws, take jurisdiction on the voluntary action of the claimant, to be transmitted, with all the vouchers, papers, documents, and proofs pertaining thereto, to the said court for trial and adjudication.”
And the purpose of the reference is stated in the letter from the Secretary, as follows:
“ Said record is sent to you for your findings as to matters of fact, and your opinion as to matters of law, together with your conclusion thereon, for the use and benefit of this department in the premises, in accordance- with the provisions of section 148 of the act of March 3, 1911.”
It thus appears from the letter, as well as from the argument of counsel that the purpose of transmitting said matter was not to secure a report from this court of findings of fact and conclusions of law for the “ guidance and action ” of the department, but rather findings as to matters of fact and an opinion as to matters of law, together with the court’s conclusion thereon “ for the use and benefit of the department,” which could by the Secretary be regarded as “ ancillary or advisory merely.” Sanborn’s case, 148 U. S., 222. And such a view was a reasonable one under the state of the law as it existed prior to the Judicial Code, because under section 12 of the Tucker Act, 24 Stat. L., 505, the head of an executive department was authorized, “ with the consent of the claimant,” to transmit a claim or matter to the Court of Claims to be proceeded in under such rules as the court should adopt, and when the facts and conclusions of law *25 should have been found the court was to report its findings to the department by which it was transmitted. Such a finding it was declared in the Sanborn case is not made obligatory on the department to which it is reported. But section 12 of the Tucker Act is repealed by the Judicial Code, and while section 148 appears to be taken from parts of the act of 1868, Revised Statutes, section 1063, and from the Bowman Act, and from the Tucker Act these parts are so blended as to eliminate, in our opinion, that feature of the law which authorized a reference by a head of a department for an advisory opinion.
The statutes relative to departmental references were under consideration in The New York case, 160 U. S., 548, where the court holds that the .Tucker Act does not displace or repeal the second section of the Bowman Act, and that there is a distinct field of operation for section 1063 of the Revised Statutes, the second section of the Bowman Act, and the twelfth section of the Tucker Act, the views of the court being expressed (p. 613) as follows:
“In our opinion the twelfth section of the Tucker Act should be construed as not referring to claims which an executive department, proceeding under section 1063 of the Revised Statutes, seeks to have finally adjudicated by the Court of Claims nor to claims described in that section, in respect of which the department, upon its own motion, and whether the claimant consents or not, desires from that court a report under the Bowman Act, of facts and law for its guidance and action. It refers only to claims which the head of an executive department, with the expressed consent of the claimant, may send to the Court of Claims in order to obtain a report of facts and law which the department may regard as only advisory. It no doubt often happened that the head of a department did not desire action by the Court of Claims in relation to a particular claim, but in order to meet the wishes of the claimant was willing to have a finding by that court which was not followed by a judgment, nor by any report for the guidance and action of the department. So that section 1063 of the Revised Statutes, the second section of the Bowman Act, and the twelfth section of the Tucker Act may be regarded as parts of one general system, covering different states of case, and standing together without conflict in any essential particular.’"
*26 And further (p. 614):
“ The object of the thirteenth section of the Tucker Act is quite apparent. A case transmitted under the Bowman Act is, we have seen, one in which the findings of fact and law are made for the guidance and action of the executive department from which it came, and therefore a rendition of judgment in such a case, if it be one of which the court could at the outset have taken cognizance at the voluntary suit of the claimant, would be a saving of time for all concerned. If the cases embraced by the twelfth section of the Tucker Act were only those provided for by the second section of the Bowman Act, the thirteenth section of the Tucker Act, authorizing a final judgment or decree where the claim was one for which the court could originally have taken jurisdiction for purposes of final adjudication, would not have made special reference to cases coming before the Court of Claims under the Bowman Act.”
That part of section 148 of the Judicial Code preceding the proviso is taken from the second section of the Bowman Act but omits an important expression contained in said section 2 of the Bowman Act, namely, the words in the last sentence thereof, which in the original read: “ When the facts and conclusions of law shall have been found the court shall not enter judgment thereon, but shall report its findings and opinions to the department by which it was transmitted for its guidance and action,” the words omitted from section 148 being the words “shall not enter judgment thereon”; and the words “ and opinions ” are also omitted. The effect of this omission it is not necessary to consider, but unless they make a material change in the statute and thereby evince a change of intent section 294 of the Judicial Code would require section 148, down to the proviso, to be construed as was section 2 of the Bowman Act, upon which it is predicated.
The meaning of section two of the Bowman Act was under review by this court in the case of Berger v. United States, 36 C. Cls., 243, and in an opinion by Peelle, judge (later chief justice), it is said:
“But in giving to the heads of executive departments authority under the act of March 3, 1883, to transmit to the court a claim or matter for judicial investigation, did the Congress intend by the use of the words ‘ guidance and ac *27 tion ’ to thereby reserve to them the additional authority to ignore or modify the findings of fact and conclusions of law so to be judicially ascertained and reported to them?
“ We think not. So long as a claim remains pending in the ' department which has jurisdiction to settle it so long will it remain under the control of the head of such department. But when such claim is transmitted to the court, it passes beyond departmental control and so remains until retransmitted in the form of a judicially investigated or ascertained claim, by which the department is bound, unless modified or set aside by the court on proper motion therefor.
“ To hold otherwise would not only be giving the executive departments revisory power over the judicial action of the court, but would be construing the act as requiring a useless proceeding.
“ If it be contended that the reference of claims to the court under the act of 1883 for its findings and opinion is only advisory, then the answer is that the Attorney General is the law officer of the Government, and under Revised Statutes, section 356, ‘the head of any executive department may require the opinion of the Attorney General on any questions of law arising in the administration of his department.’
“Therefore, our conclusion is, that when the head of an executive department elects under that act to transmit to the court a claim or matter for judicial investigation he is bound by the findings of fact and conclusions of law therein reported to him; and in the settlement of such claims so judicially investigated and ascertained, whether in favor of the claimant or the defendants, he is in duty bound to be guided in his action thereby.”
While it is true that section 148 contemplates that a claim or matter may be transmitted with the consent of the claimant, the effect of such consent is not as it was originally under the Tucker Act, because by said section 148 where the claim or matter is transmitted with the consent of the claimant and the court has jurisdiction it is expressly authorized and directed to proceed to judgment, so that while under the Tucker Act a reference could be made with the consent of the claimant for an advisory opinion the provision of the code is that if the claimant consents and the court has jurisdiction it shall proceed to judgment. And it may be added that the question of whether the reference by the head of a department is made with or without the consent of the claimant does not affect the right given by the statute to the head of *28 such department to refer a claim or matter therein provided for, and a reference can be made without the claimant’s consent. Where, however, it is made with the consent of the claimant, the proviso to section 148 contemplates that the court shall proceed to judgment if under the law it has jurisdiction to do so. The consent alone does not confer such jurisdiction.
Our conclusion, therefore, is that under section 148 references by heads of departments must be, as they were under section 2 of the Bowman Act, sent not for an advisory opinion but for the guidance and action of the departments, except in those cases which come within the meaning of the proviso in section 148. A reading of this proviso shows that the language is somewhat involved and calls for either a change of the word “ or ” to “ and ” in the second line of the proviso or a transposition of words at the end of the disjunctive clause, so that the proviso must be read in one of two ways; that is (1) that if it shall have been transmitted with the consent of the claimant ancl it shall appear to the satisfaction of the court upon the facts established that under existing laws or the provisions of this chapter it has jurisdiction to render judgment or decree thereon, it shall proceed to do so; or (2) that if it shall have been transmitted with the consent of the claimant, or it shall appear to the satisfaction of the court upon the facts established that under existing laws or the provisions of this chapter it has jurisdiction to do so, it shall proceed to render judgment or decree thereon — thereby transposing the words at the end of the clause. It seems to us that the first is the more reasonable view, because the statute proceeds to declare that “ in the latter case ” the parties shall be given such further opportunity for hearing as justice may require — the latter case referring to the whole of the proviso and not to the disjunctive clause. We think that this construction is sustained by the consideration that it could not have been intended by Congress to allow the mere consent of a claimant to give jurisdiction to the court unless the court already had jurisdiction of the subject matter “under existing laws or the provisions of this chapter.”
*29 Keferring again to the purpose of section 148, it seems to us that in authorizing the claim or matter to be transmitted to the court for a finding of facts and conclusions of law, which when returned to the department shall be “ for its guidance and action,” it is not necessarily contemplated that the court should be bound by the record transmitted by the department in those cases in which it may develop that the court has jurisdiction to render judgment; and if it becomes necessary, in the judgment of the court, in order to find the facts, to take additional testimony, the court has the right to do so under its rules. Whether the court is bound by the record, “with the vouchers, papers, documents, and proofs pertaining” to the claim or matter transmitted by the department in those cases in which the court is not authorized to render judgment, it is not necessary to inquire.
Inasmuch as it appears to us that the Secretary of the Interior in transmitting the claim or matter to this court evidently considered that the findings of fact and conclusions of law would be advisory merely, and that view was urged, upon the court in argument by counsel representing the petitioners, it seems to us proper to acquaint the department with our views upon that question rather than to assume that the reference would have been made to this court if the department had taken the view which the court now holds. In other words, the Secretary may not have made the reference if he had thought that the findings of the court would be for the “ guidance and action ” of the department and not merely advisory, or if he had not thought that the court was bound by the record transmitted. We think, therefore, that the better course for the court to pursue in this condition of the reference is to return to the department the claim or matter transmitted for further consideration by the department as to what action it will take in the premises.
Without attempting to define or limit the meaning of the words “ claim or matter,” or to express any opinion as to the department’s jurisdiction over the subject matter, or the right to transmit the claim or matter, or the question of whether under section 148 of the Judicial Code the court may consider the same, if transmitted, we deem it proper to *30 add that this court has several times held that a claim is not “ pending ” in a department if it is one of which the department has no jurisdiction, and, therefore, it can not in such case be transmitted to the court under section 2 of the Bowman Act, which is largely carried into section 148 of the Judicial Code. Illinois v. United States, 20 C. Cls., 342; Pope v. United States, 21 C. Cls., 50; Pitman v. United States, 20 C. Cls., 258.
An order will be entered that the said matter, together with a copy of this opinion, be returned to the Department of the Interior, which transmitted the same here.
Per Curiam (December 21, 1914):
A complaint was lodged in the Interior Department by certain alleged full-blood Indians against mixed bloods in the White Earth Reservation. The complaint questions the right of the mixed bloods to the annuities provided by the act of 1889. The Secretary appointed a special examiner, who entered upon an investigation at White Earth, took a large amount of testimony offered to sustain the complaint and in opposition to it, and made a report of his conclusions of fact and his recommendations to the Secretary. Accompanying his report is the testimony taken, as above stated, The entire record was transmitted by the Secretary to the Court of Claims under the provisions of section 148, Judicial Code. A more extended statement intended to show the issues presented is filed with this opinion and is here referred to.
References by heads of the executive departments to this court have been made in a variety of cases, and in examining the decisions upon the question of jurisdiction regard must be had to the law under which the court’s decision was made, for there was the act of 1868 (sec. 1063, Revised Statutes), the Bowman Act of 1883, and the Tucker Act of 1887, in each of which the right of departmental references finds some support, though they afford different fields of operation. This fact is pointed out in the New York case, 160 U. S., 598. We are now called upon to consider for the first time jurisdiction of a departmental reference under section *31 148 of the Judicial Code, which to some extent seems to blend the former'statutes on the subject in one enactment, and certainly excludes the right of the head of an executive department to transmit a claim or matter to this court for a mere advisory opinion. (See earlier opinion upon this point in the case.)
Looking to the cases involving the question of jurisdiction, we find the court has held that where the department itself has not jurisdiction of the claim or matter it can not be said to be pending there, and its transmittal to the Court of Claims by the head of the department can not confer jurisdiction on this court. Pitman's case, 20 C. Cls., 253; Illinois case, 20 Ibid., 342; Pope's case, 21 Ibid., 50; Armstrong's case, 29 Ibid., 148; Berger's case, 36 Ibid., 243.
In Jackson v. United States, 19 C. Cls., 504, where there was a reference under the Bowman Act, the court said that a claim is pending within the meaning of that act whenever it is presented for payment, “and upon being transmitted hither it becomes a competent matter of jurisdiction in which the department is to be guided by the decision of the court.”
In Chickasaw Nation v. United States, 22 C. Cls., 222, decided in 1887, there had been a reference by the Secretary of the Interior under the Bowman Act, but the opinion refers to the changes made in the matter of departmental references by the Tucker Act (p. 248), and it is evident that some consideration was given to that change, which was to authorize an advisory opinion of the court as distinguished from an opinion which would be “ for the guidance and action ” of. and therefore controlling upon, the department. In that case it is definitely stated that the restriction upon the court’s jurisdiction imposed by section 1066, Revised Statutes, does not apply to the jurisdiction conferred by the Bowman Act in departmental references, “a jurisdiction,” it is said, “ which in this case, as to the Secretary of the Interior, is in effect advisory,” thus applying in that case the provision of the Tucker Act to a reference made under the Bowman Act.
In Illinois v. United States, 20 C. Cls., 342, the question before the Secretary of the Interior involved the right of the State to locate patents for overflowed lands upon public *32 lands outside its domain, and therefore involved a claim against the United States. The court took jurisdiction so far as to hold that the Secretary had no authority to reopen the claims of the State, and, speaking of the Bowman Act, said:
“ The result of the reasoning in that case, McClure's case, 19 C. Cls. 23, is that the transfer of the claim from one of the departments to this court does not carry with it an increase of power over the matter in controversy; and if the head of the department be himself without jurisdiction or power to aid the claimant the latter’s legal position is not bettered by the transfer.”
In the Hodge case, 20 C. Cls., 352, no question of jurisdiction was raised or considered, and the court passed upon “ a motion of the defendants” that it certify to the Secretary of the Interior that having issued certain certificates the department became functus'officio. The defendants referred to were the United States.
In Oneida Indians v. United States, 39 C. Cls., 116, a motion to dismiss for want of jurisdiction in this court was overruled. The ground of the motion was that the controversy was shown by the petition to be between two bodies of Indians, and the court said it was not “ prepared upon a motion of this kind ” to so hold, or that the United States had no interest in the matter. It appeared there, however, that the matter transmitted could as well have been treated as an application by the Secretary for further instruction of the court upon the method of executing its former decree relating to the fund in question, and it is so stated by the court. Whether the matter was considered on the motion to dismiss as under the Bowman Act or the Tucker Act does not appear.
Berger's case, 36 C. Cls., 243, was decided in 1901. It was there held that this court is without jurisdiction of a diplomatic claim presented by a foreign Government to the United States which was transmitted under the Bowman Act or the former statute, section 1063, Revised Statutes, and that the judicial determination of a claim transmitted was for the guidance and action of the department and obligatory upon the latter. There was no contention in that case that the reference was under the Tucker Act, which authorized a *33 reference, by . consent of the claimant, for an “ advisory ” opinion, New York case, supra.
It thus appears that this court has consistently recognized a distinction between opinions which were intended to be advisory merely and those which were for the guidance and action of thf department, and the cases above considered appear to have been in some form claims against the United States.
Since Congress has so carefully defined by section 145 the nature of the controversies of which the Court of Claims has cognizance, limiting its jurisdiction to hear and determine them to cases in which the United States are a party defendant, we do not think it was intended by section 148 to authorize the court to hear and determine controversies to which.the United States are not a party. Unless the court may determine the law of the case in some authoritative way it is difficult to see how its conclusions upon the controverted “ questions of law ” can be for the “ guidance and action ” of the department. Section 148 authorizes departmental references and section 149 provides that all cases transmitted by the head of any department “ shall be proceeded in as other cases pending in the Court of Claims, and shall in all respects be subject to the same rules and regulations,” while section 150 provides for the payment of any final judgment which may be rendered for the claimant in any case transmitted under the two preceding sections. Whether sections 149 and 150 are to be confined to the cases contemplated by the proviso to section 148, where the court may proceed to hear and determine the claim transmitted, we need not now determine. Some consideration of them is probably due • when inquiring into the question of what Congress intended by section 148 and the meaning they ascribed to “ claim of matter pending in any executive department.”
The purpose of the Bowman Act, indicated by its title, was “ to afford relief to Congress and the executive departments in the investigation of claims and demands against the Government.” It provided for references to the Court of Claims by either House of Congress and by the head of any executive department, but the findings of fact and conclu *34 sions by the court in the latter class were declared to be for the guidance and action of the department, while a different effect was accorded by the act to congressional references.
Turning, then, to section 148 of the Judicial Code we find it is principally drawn from section 2 of the Bowman Act. The feature of the Tucker Act which authorized advisory opinions by the court finds no place in the present law.
In re Sanborn, 148 U. S., 222, was decided under the provisions of the Tucker Act, section 12, which do not appear in section 148. As was suggested by Chief Justice Peelle in Berger’s case, 36 C. Cls., 247, advisory opinions may be had from the Attorney General, who “is the law officer of the Government, and, under section 356, Revised Statutes, the head of any executive department may require the opinion of the Attorney General on any questions of law arising in the administration of his department.” This condition may be the occasion for omitting section 12 of the Tucker Act from the Judicial Code.
We think the proper construction of said section requires us to hold that the findings of fact and conclusions which are made in a departmental reference, properly transmitted here, are intended by the present law to be for the guidance and action of the department, and therefore binding upon the latter.
The Court of Claims is given, by section 145 of the Judicial Code, jurisdiction to hear and determine claims (except for pensions) against the United States founded upon the Constitution of the United States, any law of Congress, any regulation of an executive department, any contract with the Government, or for damages in cases not sounding in tort; also matters of set-offs, counterclaims, claims for damages, or other demands on the part of the Government “ against any claimant against the Government in said court,” and claims of certain disbursing officers seeking relief in designated cases. By a later act jurisdiction is conferred in certain patent cases. Among the exceptions from its jurisdiction is any claim against the Government growing out of or dependent on any treaty stipulation entered into with the Indian tribes.
*35 The matter here referred is founded upon a complaint lodged in the Interior Department by certain Indians of the White Earth Reservation against certain other Indians or mixed bloods upon said reservation. The complaint challenges any right of the mixed bloods to receive annuities payable under the act of January 14, 1889, 25 Stat. L., 642. The controversy is between Indians, or alleged full bloods, on the one side and mixed bloods on the other. It is not a claim against the United States. The learned Solicitor of the Interior Department concedes as much when, in referring to the claims excluded from this court’s jurisdiction by section 153, he contends that the claim or matter here involved “is not a claim against the United States.” It is manifest, therefore, that this court has not jurisdiction to hear and determine said claim with or without the consent of the parties either under section 145 or the proviso to section 148, because consent can not confer jurisdiction upon the court. Price case, 373, 375.
Being without jurisdiction of such a controversy if it had been instituted in this court by the petitioners, does section 148 of the Judicial Code confer such cognizance of the case or jurisdiction as will enable the Court of Claims to make a finding of facts and conclusions of law upon the record transmitted, which, being certified to the Secretary of the Interior, are to be considered as authoritative and binding upon him — that is, for his “ guidance and action ” ? Our right to do so is questioned in this proceeding by one of the respondents. Being a question of jurisdiction, we should take notice of it, whether raised by a party or not. Reid's case, 211 U. S., 529.
The language of section 148 is that “ when any claim or matter is pending in any of the executive departments which involves controverted questions of fact or law” it may be referred here. To admit the contention that the head of an executive department can transmit any hind of “claim or matter ” for an adjudication as to the facts or law for his guidance and action would lead to the conclusion that it is the act of the department and not the act of the Congress which determines the extent of the court’s authority, or the cognizance which it can take over such claim or matter.
*36 The Supreme Court, In re Chapman, 166 U. S., 661, 667, was considering a statute therein mentioned and said:
“ It is true that the reference is to ‘ any ’ matter under inquiry, and so on, and'it is suggested that this is fatally defective because too broad and unlimited in its extent ; but nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion, Lau Ow Bew v. United States, 144 U. S., 47, 59; and we think that the word ‘ any,’ as used in these sections, refers to matters within the jurisdiction of the two Houses of Congress before them for consideration and proper for their action, to questions pertinent thereto, and to facts or papers bearing thereon.”
At the very inception of the matter in this court we were met with a request by some of the respondents to be allowed to take additional testimony, a request which was opposed by counsel for the department, who insisted that our investigation must be confined to the record transmitted to us. Whether this is a correct view where the claim or matter is not referred with the consent of the claimant or within the jurisdiction of the court to proceed to judgment therein, under the proviso in section 148, we need not consider. The importance, however, of giving to Indians whose right to annuities is assailed the fullest opportunity to adduce relevant or material evidence and to be heard, if this court could hear the matter, is shown by a consideration of the rulings in McKay v. Kalyton, 204 U. S., 548; Garfield v. Goldsby, 211 U. S., 249; Lowe v. Fisher, 223 U. S., 95.
Said cases of McKay v. Kalyton and Goldsby v. Garfield tend to illustrate the correctness of our conclusion that by the letter of transmittal in the instant case the Court of Claims does not acquire jurisdiction under section 148 and has no. jurisdiction of the subject matter otherwise. McKay v. Kalyton involved a claim to an allotment of land and was a suit brought by one Indian against another Indian in a State court. A question raised was whether the act of 1894, 28 Stats., 286, authorizing persons who are in whole or in part of Indian blood entitled to or claiming an allotment of land to prosecute or defend an action or suit relative to their *37 right to such allotment in the proper circuit court of the United States, conferred authority for the bringing of such an action or suit in a.State court. The Supreme Court held that the State court did not have jurisdiction under that statute, and said (p. 468):
“As observed in the Smith case, 194 U. S., 408, prior to the passage of the act of 1894 ‘ the sole authority for settling disputes concerning allotments resided in the Secretary of the Interior.’
“ This being settled, it follows that prior to the act of Congress of 1894 controversies necessarily involving a determination of the title, and incidentally of the right to the possession of.Indian allotments while the same were held in trust by the United States, were not primarily cognizable by any court, either State or Federal.
“ ‘ By this provision,’ it is said (p. 469), ‘ as pointed out in the Smith case, sufra, the United States consented to submit its interest in the trust estate and the further control of its conduct concerning the same to the result of the decree of the courts of the United States — a power which such courts could alone exercise by virtue of the consent given by the act.’ ”
The act of 1894 was amended by the act of February 6, 1901, 31 Stat. L., 760, so as to require that in all such suits respecting allotments of Indian lands “the parties thereto shall be the claimant as plaintiff and the United States as party defendant.”
It is thus recognized that the “ sole authority for settling disputes concerning allotments resided in the Secretary of the Interior ” (except, of course, congressional action — Heff case, 197 U. S., 498), and that no court except by virtue of the act of 1894 as amended by the act of 1901 had any jurisdiction in the matter. If the reasons for the policy of the Government in the matter of allotments to Indian lands be applicable to its policy with reference to annuities to Indians, the amounts of which are constantly varying and the payments of which are under the supervision of the Interior Department, it would seem to follow as a corollary to the ruling in McKay v. Kalyton that as no act has authorized suits between Indians relative to annuities the sole authority for settling such disputes resides in the Secretary. It would, *38 hence, follow that the Secretary can not delegate authority, since it seems to have required an act of Congress to vest authority in the matter of allotments “ in any court.”
It is urged on behalf of some of the respondents here that their right to allotments and annuities is confirmed, beyond any question, by the rolls made and approved by the Chippewa commission, which, they claim, are final, as being the act of a specially constituted commission, whose action was approved by the President. And, further, they claim that if the original census rolls, as taken and reported and approved, are not final, the subsequent statutes (act of 1902, directing the Secretary of the Interior to complete the allotments), the acts of 1904 and 1906, relating to allotments, 33 Stat. L., 539; 34 Stat. L., 353, together show that the allotments have been confirmed by congressional action, which confirmation, they claim, necessarily includes the question of annuities. The counsel for the department, while denying any such effect to the census rolls, or action of the Chippewa commission, or acts of Congress, as said respondents claim for them, insist that the question involved here affects annuities alone. A distinction is thus made between the right to an allotment and to an annuity, though both may be derived under the same act. As to whether there is any such distinction to be drawn, we express no opinion. If such a distinction is allowable, however, it furnishes the more reason for saying that “the sole authority” of the Secretary to determine such a controversy can not be transmitted to the Court of Claims under the provisions of section 148.
A question which arises, if we are to give an authoritative opinion to the Secretary, is whether in a controversy, such as appears in the record transmitted here, between Indians, full bloods on the one side and mixed bloods on the other side, to which the United States are not a party defendant and involving the rights of the respondents to annuities under treaties between the Government and Indians or under acts of Congress, the court should apply the rules of law applicable to persons capable of acting and of being bound by their individual actions or those more liberal rules which are applied where the relations of the Government to Indians *39 is under consideration. Lone Wolf v. Hitchcock, 187 U. S., 554-565. In the Mille Lac case, 229 U. S., 498, it was held that the action taken under the act of 1889 resulted in an agreement binding upon the Indians and the Government. Was it alike binding upon the individual Indians in controversies between themselves as to rights secured by said act?
These questions are suggested for the purpose of showing that before assuming jurisdiction in a controversy such as we have here the court’s right to adduce conclusions on the principles applicable which could control the Secretary’s action should be clear. The action which section 148 contemplates when a claim or matter is transmitted by the head of a department is judicial action, the act of a court, and its conclusions are apparently designed as an aid to the department by furnishing it with an opinion upon the law applicable to the claim or matter, which, being acted upon by the department, will enable the latter to make a final disposition of the controversy as upon an authoritative determination of the law or facts.
If the court’s findings and conclusions do not afford a basis for final disposition in the department, nothing material would result from them, and consequently no relief to the department in the investigation of claims or demands against the Government would be afforded by such conclusions. We do not attempt to define the limits of departmental references to this court; to do so would probably be unwise. The question can be passed upon as it arises. We may say, however, that any claim or matter included within the numerous subjects of jurisdiction conferred on the Court of Claims by section 145 of the Judicial Code, or the later act relative to patents, to which the United States are a party, may be transmitted to this court by the head of a department if the claim or matter is pending in such department. It may be transmitted, whether barred by the statute of limitations obtaining in this court or not barred. Green case, 18 C. Cls., 93. If barred here, the court may find the facts and reach its conclusions, because the claim or matter is of the nature of claims or matters of which the court has jurisdiction or because the court has cognizance of their *40 subject matter. Its conclusions in that case will serve as an authoritative determination of the questions, and therefore be a basis of action by the department. If the claim be not barred by the statute of limitations, the court can proceed to determine the question involved as authorized by the proviso to section 148. The claim or matter may be transmitted with or without the consent of the claimant therein; and if with his consent provision is made by section 148 for its disposition by the court.
Within the broad limits of the authority of this court to act in references made as above stated, a finality can be made to the controversy either by the department acting in conformity with the conclusions of the court or by the court acting under the proviso to section 148. The purpose of the section is to secure a judicial expression from a court, and every court must take notice of the limits of its jurisdiction. Reid’s case, 211 U. S., 529, 539. The decision by a court which has no cognizance of the subject matter can not be a controlling determination of the question involved. W alicer’s case, 109 U. S., 258; Fernandez case, 12 Wall., 130.
Our conclusion is that we have no jurisdiction of said claim or matter, and the record, papers, and documents transmitted here will, together with a copy of this opinion, be returned to the Secretary of the Interior; and it is so ordered.