Peelee, J.,
delivered the opinion of the court:
The several claims involved in this action arose in June and July, 1863, for money paid for labor in the construction of fortifications around the city of Pittsburg, which were erected at the request of the citizens thereof, under the direction of skillful military officers of the United States, to protect said city against an attack from the Confederate forces then invading Pennsylvania, West Virginia, and southern Ohio.
The Department of the Monongahela, within the limits of which were located the city of Pittsburg and the Allegheny arsenal, was created by General Orders, No. 172, issued by the Secretary of War June 9,1863, andMaj. Gen. W. T. H. Brooks, U. S. Army, was assigned to the command of the department, while Brig. Gen. Barnard, an engineer officer, was assigned to advise and direct as to the fortifications to be constructed. The citizens of Pittsburg, on an appeal from Gen. Brooks so to do, furnished the necessary labor from their factories and other places of business and paid for the same. They subsequently procured certain vouchers covering the services so performed and the amounts paid by each, about which there is no controversy, to each of which was attached a certificate from Gen. Brooks in the form set forth in the findings.
These vouchers, .in the form of claims against the United States, were presented to the Secretary of War for payment in March, 1866, and by his direction were investigated by the claims commission of the War Department, which, on October 17,1866, decided against the validity of said claims; the Secretary of War approved and confirmed said decision on the 25th October, 1866. Sundry other action was taken in the War Department looking to areopeningof the case without avail, and the claims were, on the 22d June, 1875, referred by the Secretary of War to the accounting officers of the Treasury Department, as set forth in the findings. Sundry action took place in the Treasury Department prior to July 27,1876, but on that day the Second Comptroller, Carpenter, in considering the claims and the report of the Third Auditor, who had previously recommended their allowance, finally rej ected said claims. The *165 action in tbe Treasury Department subsequent to that date will be noticed hereafter.
The claims were referred to this court by the Secretary of the Treasury, on the recommendation of the Second Comptroller, on the 21st day of May, 1890, under the provisions of Bevised Statutes, section .1063, as involving “disputed facts and controverted questions of law.” The original petition was filed January 20,1892. Several questions are presented by the findings for the consideration of the court, the first of which is: Were the claims pending or were they res judicata in the Treasury Department at the time they were transmitted here by the Secretary of the Treasury?
The answer to this question depends upon the action of the Treasury Department subsequent to July 27,1876, when the Second Comptroller disallowed said claims. The action in the Department subsequent to that date is set forth in the findings.
It will thus be seen that the claims were first disallowed in the War Department October 25,1866, and by the Second Comptroller July 27,1876. The first application for a reopening of the case was made April 15,1885, and while the Comptroller, in his report to the 'Secretary of the Treasury, stated that if the case should be reopened it should be certified to the Court of Claims, the Secretary did not, even if he had the power so to do, authorize the case to be reopened, but returned the Comptroller’s report, with direction “for such further action upon the claim as in his judgment the additional evidence herewith presented will justify.” The Comptroller then, on May 2,1885, referred his report to the Third Auditor, saying, among other things, “the same having been reopened for further consideration by the Secretary,” and he then adds: “ As the Auditor’s report of August 17,1875, was introductory merely, and a large amount of new testimony has since been presented, the case is now returned for the Auditor’s action * * *.» The Third Auditor, in response to that reference, however, on October 27,1885, after reviewing the additional evidence submitted, concludes:
“ Therefore I do not find that it adds anything to the evidence.
“ Some slips cut from newspapers are presented; but I do not perceive that they show anything not already an acknowledged part of the History of the transactions.
*166 u Tbe case, therefore, rests substantially upon the same showing as when before considered.
“ In their indorsement made upon the circular issued by the Secretary of the Treasury July 28,1886, the First Comptroller, the Second Comptroller, and the Commissioner of Customs united in stating the principles which should govern the question of opening and reconsidering a settled claim or account. Applying those principles, I think the decision by the Second Comptroller of July 27,1876, should not be disturbed.
“ Respectfully,
u Jno. S. Williams,

“AtuMtor”

Applications subsequently made for a reopening of the case were referred to Third Auditor Hart; but on October 24,1889, that officer reported to the Second Comptroller, reciting the action of his predecessor, who, on August 17,1875, had recommended the allowance of the claims, holding that the new evidence offered was of the same tenor as the old and declining to make any recommendation in the case.
The Second Comptroller then, May 19,1890, addressed the letter set out in the findings to the Secretary of the Treasury, recommending that said claims be referred to the Court of Claims. It will be observed that, while the Second Comptroller states to the Secretary that the claims were first presented to the War Department for allowance in 1866, he omits to make any mention to the Secretary of the action in either of the Departments thereon. In that reported condition of the case the Secretary of the Treasury transmitted the claims to the courb for trial and adjudication.
The new e vidence offered was for the purpose of showing that G-en. Brooks was authorized to contract with claimants for the services so rendered and that he had so contracted; but the Third Auditors held that such new evidence was substantially the same as that heretofore presented and considered; so that no action was taken by any of the Auditors by which the case was reopened. On the contrary, Third Auditor Williams, in his report of October 27,1885, held that the action of the Comptroller (Carpenter) in disallowing the claims, July 27, 1876, “should not be disturbed,” while Third Auditor Hart, October 24, 1889, declined to make any recommendation in the case. Therefore the case was not reopened subsequent to its final disallowance, July 27,1876, and was not pending in the Department when it was transmitted to this court.
*167 Tlio claimants contend that Revised Statutes, section 1063, differs from the acts of March 3, 1883 and 1887, known as Bowman and Tucker acts, in this, that in each of the latter acts the head of a Department can only transmit to the court pending claims, while under said section 1063 no such condition is imposed, and a claim may be transferred by the head of a Department “ whether pending or not,” and in support of that contention cites the Delaware Steamboat Case (5 O. Cls. R., 63). In that case a claim had been filed in the War Department, and. was referred to the accounting' officers of the Treasury Department for adjustment. A balance was found due and certified to the Secretary of War for payment. The Secretary refused payment,' and transmitted the claim to the court under the provisions of section 7, Act of June 25, 1868 (15 Stat. L., 76, now Rev. Stat., sec. 1063), for revision, under the Aet of March 30,1868 (15 Stat. L., 54, now Rev. Stat., sec. 191), which provides in substance that the balances which may be certified by the accounting officers to the heads of Departments shall be final and conclusive upon the executive branches of the Government, and “ be subject to revision only by Congress or the proper courts.” .
When the balance was certified to the Secretary of War and he refused payment, it was still a claim made upon the War Department, and in that same case it was said:
“A requisition for a warrant for the payment of the claim is demanded of the Secretary of War; and it is therefore a claim, a demand, made upon his Department. And if such it be, it is competent for him, if it exceed $3,000 and involved disputed facts or controverted law, to send it here for revision.”
To the same effect also is the Winnisimmet Company Case (12 O. Cls. R., 319), cited by claimants.
In the case at bar no balance was certified, and the same could not therefore be transmitted here for revision because of an erroneous allowance, as was done by the Secretary of War in the cases cited. The difference between the Bowman and Tucker acts and said section 1063 in this respect in brief is this: The latter provides that “ Whenever any claim is made against any Executive Department,” etc., while the other acts (substantially the same) provide that “ when a claim or matter is pending in any of the Executive Departments,” etc. We attach no importance, as the claimants do, to the absence of *168 the word 11 pending'17 in said section 1083, for the words “whenever any claim is made against any Executive Department” necessarily imply that the claim is pending in such Department until allowed and paid or finally rejected; otherwise no claim could be made, as official or other executive business is not transacted orally.
It is only the pendency of a claim or matter in an Executive Department that gives the head of such Department jurisdiction to transmit the same to the court; and this is true whether the claim be transmitted for trial and adjudication under section 1003 or for findings of fact merely as advisory to such Department.
In speaking of these several acts it was said in The State of Illinois Case (20 C. Cls. R., 348,349):
“The Bowman Act is exceptional and peculiar in its provisions, and the jurisdiction conferred by it is very different from that granted by sections 1059 and 1083, Revised Statutes, being in its nature advisory.”
It is because the claim is pending, undisposed of, that the head of a Department seeks the aid of the court to advise him as to the settlement of the disputed facts and controverted questions of law, while under section 1003, when the case is transmitted to the court, the Department ceases thereafter to have jurisdiction over the claim.
The claimants also contend that under the decision in Lip-pitffs Case (14 O. Cls. R., 148-154) the court acquires jurisdiction exclusively by the transmission of the claim, and that the court .should proceed to determine the case on its merits. In this case the court, in speaking of the amended Court of Claims Act of March 3, 1863 (12 Stat. L., 765) and the Act of June 25, 1868 (supra), use this language:
“In a word, the two statutes were enacted for entirely different purposes. The one conferred on the claimant a right of action against the G-overnment; the other conferred on the ExecutiveDepartments a judicial means of investigation against claimants. Under the former the court acquires jurisdiction only by the filing of a petition either directly by himself or indirectly by one of the Houses of Congress. Under the latter it acquires jurisdiction exclusively by the transmission of the claim by the Secretary, the subsequent petition of the party performing merely the office of a pleading.”
What was meant there is, that if jurisdiction is acquired at all, it is by virtue of the reference and not by the subsequent *169 filing of tbe petition. It would not be contended that the head of a Department could confer jurisdiction on the court by the transmission of a claim under said section 1063, “unless it belongs to one of the several classes of cases which, by reason of the subject-matter and character, the said court might, under existing laws, take jurisdiction of on such voluntary action of the claimant.” Nor would the transmission of a claim by the head of a Department, which he had no power to settle and pay, confer jurisdiction on the court to render judgment. (Hart v. United States, 118 U. S., 62, affirming the decision of this court in 16 C. Cls. It., 459; Chesapeake and Ohio R. R. Co. Case, 20 C. Cls. R., 49; 15 id., 414; 12 id., 319.) And the same rule was held to apply to cases transmitted under the Bowman Act. (McClure’s Case, 19 C. Cls. R., 18, 30.) The same rule applies to claims transmitted by the head of a Department which were not filed therein within six years after they had accrued. (Finn v. United States, 123 U. S., 231; The Savage Case, 23 C. Cls. R., 255.)
If the disallowance of the claims by the Second Comptroller, July 27,1S76, was not thereafter reopened by reason of fraud, mistake in calculation, or the filing of material new evidence, the decision was final and conclusive, and the case was res judicata in the Department; and it was not, therefore, within the power of the Secretary or his successor in office to transmit the claims to this court, and, having no power to transmit, the court acquires no jurisdiction thereby.
There was no contention of fraud, and, being a rejected claim, no mistake in calculation could have arisen in the Department. The new or additional evidence filed therein, with an application to reopen the case, was held to be substantially the same as that theretofore filed and considered, and was not, therefore, material new evidence. The court can' not review that evidence to ascertain whether or not such holdin g was correct. It is enough for the court to know that such was the decision, and that for that reason the case was not reopened.
The doctrine of res judieata as applied to the Executive Departments has long been sustained both by the courts and by the Attorneys-General of the Government. No rule of law has been more consistently adhered to.
The court in the case of the United States v. Bank of the Metropolis (15 Peters, 390, 401), in speaking of the fight of an *170 executive officer to review the action of his predecessor, said such right “ extends to mistakes in matters of fact arising’ from errors in calculation and to cases of rejected claims in which material testimony is afterwards discovered and produced,” and it was there held that the successorin office had the same power and no more than his predecessor. (Jackson Case, 19 C. Cls. R., 504; Day, Adm’x Case, 21 C. Cls. R., 263.) To the same effect, also, is the Waddell Case (25 C. Cls. R., 323, 327), and the State of Illinois Case (20 C. Cls. E., 342). It was said in the Waddell Case (supra), “ the law has been too well settled to be in doubt at this time that public officers can not open and reexamine cases decided by their predecessors, except for fraud, mistakes in matters of fact arising from errors in calcution, or newly discovered material evidence.”
In Jackson’s Case (19 C. Cls. R., 504) a claim was filed in the Treasury Department by an informer claiming' $7,500 of the amount recovered, but the Secretary decided, as a matter of law, that he was only entitled to $5,000 under section 4, Act of Dime 22,1874 (IS Stat. L., 186), which was paid; and a subsequent Secretary transmitted the claim for the balance to this court under the act of March 3, 1883, known as the Bowman Act. It was held that the action of the Secretary was conclusive on his successor, aud that no further action could be taken by the Department.
In that same case it was held:
“ It is a settled rule of administrative law that the final decision of a matter before the head of an Executive Department is binding upon his successor if no material testimony be afterwards discovered and produced.”
In the State of Illinois Case (supra), where the authorities on this question are admirably grouped, the court said:
“As early as 1825, Mr. Wirt, then Attorney-General, in a letter to the Secretary of the Eavy, said that he had understood it to be a ‘ rule of action prescribed to itself by each administration to consider the acts of its predecessors conclusive as far as the executive is concerned.- The Supreme Court, in the case of the Bank of the Metropolis, decided in 1841 (15 Peters, 401), limited the right of an executive officer to review his predecessor’s decisions 1 to mistakes of fact arising from errors of calculation, and to cases of rejected claims in which material testimony is afterwards discovered and produced.’ In 1849, Mr. Attorney-General Toucey held (5 Op., 29) that the principle oí res judicata applied to claims ‘ thus deliberately *171 considered and rejected.’ His successor, Mr. Reverdy Johnson (5 Op., 240), ruled that the decision of a Secretary of tbe Interior, ‘whether right or not,’ could not be overruled by his successor; and these decisions were followed consistently by other Attorneys-General, among them Mr. Black (9 Op., 300 and 387); Mr. Stanbery (12 Op., 169 and 356); Mr. Hoar (13 Op., 33 and 226); Mr. Akerman (13 Op., 387); Mr. Bristow (13 Op., 457); and Mr. Williams (14 Op., 275). Even the opinion of Mr. Attorney-General Bates, in the Sot Springs Case (10 Op., 61), cited as a departure from this line of authorities, does not seem to be such; but if it be, Mr. Bates, retraced his steps the next year in the Bart Case (10 Op., 255),wherein he reviewed and followed the opinions of his predecessors.
“ In 1864 (Lavallette v. The United States, 1 C. Cls. R., 149), this court decided ‘that the head of a Department can not, in a matter involving judgment and discretion, reverse the decision and action of his predecessor even in a matter relating to the general affairs and management of the business of the Depart-ment;’ and the Supreme Court held in Stone v. The United States (2 Wall., 535) that one ‘officer of the Land Office is not competent to cancel or annul the act of his predecessor; ’ finally, this court, at the last term, in Jackson’s case, followed the path so clearly defined by sixty years of consistent rulings, and held that the Secretary of the Treasury could not reopen a claim adjusted by his predecessor. ”
The claimants have cited a number of authorities on the point that the vouchers given to the claimants are sufficient evidence to entitle the claimants to recover the several amounts, but inasmuch as the services rendered, as well as the several amounts covered by the vouchers, are not questioned, and we have reached conclusions adverse to the claimants on other grounds, we need not review them.
Authorities are also cited on the point that a commanding officer in time of emergency has power to' make a contract to bind the Government to pay the expenses of erecting fortifications. But holding, as we do, that the case was res judicata in the Department, it was not within the power of the Secretary of the Treasury to transmit the claims, and the court is therefore without jurisdiction to adjudicate the case on its merits.
The petition is dismissed.