Downey, Judge,
delivered the opinion of the court:
These cases are here as departmental references under section 1063, Revised Statutes. Separate petitions have been filed in each case entitled as above, and there has been no order of consolidation but they have been submitted together, are here by virtue of the same reference, are, for the purposes of the present opinion, alike, and will be considered together. The departmental reference was as follows:
“Navy DepartmeNt,
“ Washington, February 3,1906.
“ Sir : In pursuance of section 1063, there is submitted herewith to the Court of Claims, to be proceeded in as authorized by said section, the claim made against the Government by James F. Secor, surviving partner of the firm of Secor and Company.
“ James F. Secor claims to be the surviving partner of the firm of Secor and Company, contractors for building *94 certain vessels for the Navy during the War of the Rebellion. A suit is now pending in the Court of Claims, No. 10269 congressional, for extra work and changes in plans _ and specifications during the building by said firm of the ironclad monitors Mahopac, Manhattan, Tecumseh, and Mo-hongo.
“ If further information and papers are desired, the same will be furnished as promptly as practicable after tire receipt of a request therefor.
“Very respectfully,
“ TrtjmaN H. Newberry,

“Acting Secretary S. W. B. D.

“ The Honorable The Court oe Claims.”
The principal question now for consideration and the one with which we will particularly deal is whether these cases are before us under such circumstances as that we have jurisdiction to determine them. If an adverse conclusion must be reached the merits of the cases otherwise are immaterial. Preliminary to the determination of that question it is necessary to recite some of the facts, both as to the claims involved and the circumstances of the assumed departmental reference. That, under the circumstances, may be done narratively without the necessity of separate findings as upon the merits.
The matters involved are the outgrowth of contracts for the construction of “ironclad, shot-proof, steam floating batteries of iron and wood combined ” during the period of the Civil War. The contract in the first entitled case was for the construction of a vessel, afterwards called the Manhattan; in the second entitled case for the construction of a vessel afterwards called the Mahopac; in the third entitled case for the construction of a vessel afterwards called the Tecumseh. All three of the contracts were dated September 15,1862, and the contract price in each case was $460,000.00. The contract for the Manhattan, Case No. 29939, was executed by Wm. Perine, Zeno Secor, and Francis Secor, and the contracts for the Mahopac, Case No. 29943, and the Tecumseh, Case No. 29944, were executed by Zeno Secor and Francis Secor.
After the filing in this court of the departmental reference, above quoted, there was filed in each case as of date December 27, 1906, a petition entitled “ Charles A. Secor, *95 administrator of tbe estate of Francis Secor, and Adelle Secor, administratrix of the estate of Zeno Secor, against the United States.” On January 23, 1907, there was filed in each of said cases, entitled as last stated, a motion by the defendant to dismiss the petitions and order of transmittal on several grounds stated, one of which was “ because the order of transmittal, dated February 3, 1906, filed in this cause February 7, 1906, transmits the claim of James F. Secor, while the petition is filed by the administrators of Francis Secor and Zeno Secor, and nothing in said petition indicates that James F. Secor has any interest in this claim.”
While these motions were pending upon the law calendar of this court, on February 17, 1909, petitions as first above entitled were filed.
In connection with the construction of these vessels, as well as many other vessels constructed by the Government during the years 1862 and 1863, when the construction of such vessels was to some extent in an experimental stage, there were many changes made in the plans and specifications, and the contractors were in some instances considerably delayed by the Government by reason of working plans not being promptly furnished, and these conditions gave rise to claims on the part of the contractors for extras, over and above the contract price, and ultimately also to claims by reason of increased cost of materials and labor due to delays during a period of gradually increasing prices. In some instances payments for extras and for alterations were made in due course during the progress of the work, par ticularly in cases where there had been agreement as to the price therefor, but in October, 1863, the Secretary of the Navy, on recommendation of the Chief Constructor, and because of the confused condition of accounts for the construction of various vessels, appointed a board headed by Rear Admiral Gregory, and known afterwards as the Gregory Board, to examine the accounts of contractors and report the amounts due by reason of alterations and additions. Claims involving large numbers of items were submitted to this board by the contractors, and allowances in considerable sums, amounts not here material, were made and paid.
*96 Numerous claims bad been presented to Congress bj contractors who had constructed vessels for the United States during the Civil War, and on March 9, 1865, the Senate, by resolution, requested the Secretary of the Navy “to organize a board of not less than three competent persons whose duty it shall be to inquire into and determine how much the vessels of war and steam machinery contracted for by the department in the years 1862 and 1863 cost the contractors over and above the contract price, and the allowances for extra work, and report the same to the Senate at its next session. None but those who have given satisfaction to the department to be considered.” The Secretary of the Navy, pursuant to said resolution, appointed a board of three naval officers, of which Commodore Selfridge was the head, and which was thereafter known as the Selfridge Board. The claimants, including the contractors for the vessels here involved, were notified to appear before said board. The board made report, finding large sums as to many vessels, which was communicated to the Senate by the Secretary of the Navy on January 31, 1866. The report of the Selfridge Board was as to the additional cost to the contractors of vessels constructed by them, over and above the contract price, without consideration or determination of the question as to the responsibility for the increased cost, and being in this respect unsatisfactory, Congress, on March 2, 1867, passed an act (14 Stat. 424) authorizing and directing the Secretary of the Navy to investigate claims of contractors for the building of vessels of war upon a basis stated therein, and report to Congress “ a tabular statement of each case, which shall contain the name of the contractor, a description of the work, the contract price, the whole increased cost of the work over the contract price, and the amount of such increased cost caused by the delay and action of the Government as aforesaid, and the amount already paid the contractor over and above the contract price.” The Secretary of the Navy concluded that it was necessary, in order to comply with this act, to convene a board of naval officers to make the requisite investigation, and on July 6, 1867, he appointed a board *97 beaded by Commodore Marchand, and known as the Mar-chand Board.
On March 14, 1867, the Secretary of the Navy communicated to the various contractors information as to the passage of the act of March 2,1867, inclosing with his communication a copy thereof, and directing them, if they came within the provisions of the act to furnish in writing on or before June 1, information upon certain designated points, the fourteenth requirement of said communications being “ a bill in form, embracing only those items, clearly and succinctly stated, upon which your claim is founded, with the amount claimed affixed to each item.” Under date of June 1, 1867, the contractors for the ManhoMan, Mahopac, and Tecumseh, signing themselves “ Ferine, Secor Co.” and “ Secor Co.” replying to the Secretary’s communication of March 14, submitted to him a statement and claim, which was by him referred in due course to the Marchand Board. The report of the Marchand Board, referring to the contractors for these vessels as Secor & Co. and Ferine, Secor & Co., reported the whole increased cost of the work over the contract price as claimed by the contractors, $1,236,101.22, that they had already been paid, over and above the contract price, $521,195.58, and allowed them in addition thereto, as the amount of the increased cost caused by the delay and action of the Government, $115,539.01. The contractors for these vessels came to be referred to during this period as “Secor & Co.” and “Ferine, Secor & Co.” In the report of the Selfridge Board they had been referred to as “ Z. & F. Secor ” and “ W. Perine and Z. & F. Secor.” The report of the Marchand Board was transmitted by the board to the Secretary of the Navy, and on December 4, 1867, the Secretary of the Navy transmitted it to the Senate, with the following communication:
“ Navy Department, December 4, 1867.
“ Sir : An act of Congress on the 2d of March last directs the Secretary of the Navy ' to investigate the claims of all contractors for building vessels of war and steam machinery for the same, under contracts made after the first day of May, eighteen hundred and sixty-one, and prior to the first *98 clay of January, eighteen hundred and sixty-four, and to report to' Congress a tabular statement of each case, which shall contain the name of the contractor, a description of the work, the contract price, the whole increased cost of the work over the contract price, and the amount of such increased cost caused by the delay and action of the Government aforesaid, and the amount already paid the contractor over and above the contract price.’
“ To comply with the requirements of this act it became necessary to convene a board of officers for the examination of the several claims presented. Commodore J. B. March- and, Chief Engineer J. W. King, and Paymaster Edward Foster were assigned to this duty, and their report is herewith transmitted.
“ I have the honor to be, very respectfully,
“ GideoN Welles, Secretary of the Navy.
“ Hon. BeN.t. F. Wade,
“ President of the Senate fro temP
By an act approved July 13, 1868, entitled “An act for the relief of certain Government contractors” (15 Stat., 379), Congress directed the Secretary of the Treasury to pay, among others, “to Secor and Company and Perine, Secor and Company the sum of one hundred and fifteen thousand five hundred and thirty-nine dollars and one cent,” and, referring in said act to the amounts therein directed to be paid as “the amount found to be due to each of the parties herein respectively named by the Secretary of the Navy under the act of Congress entitled ‘An act for the relief of certain contractors for the construction of vessels of war and steam machinery,”’ approved March two, eighteen hundred and sixty-seven, provided therein that said sums “shall be in full discharge of all claims against the United States on account of the vessels upon which the board made the allowance as per their report under the act of March two, eighteen hundred and sixty-seven.” Said sum was paid as directed.
Thereafter these contractors insisted to the Secretary of the Navy upon further allowance on their claim, particularly contending that there had been discrimination as between them and another contractor who had built the same type of vessel, and on August 6, 1869, by an order signed by Admiral Porter “by order of the Secretary,” a board *99 was created, consisting of three naval officers, of which Commodore Boggs was the head, which board convened August 17, 1869, remained in session three days and recommended a further payment to these contractors of $93,117.22, the amount claimed at the hands of this board. The Secretary of the Navy on December 31, 1869, directed the Chief of Bureau of Construction to pay claimants said sum, which was done. It appears from a statement in the record, not evidential, that this payment contributed in part to a congressional investigation of certain acts of the Secretary of the Navy.
On December 6, 1899, there was introduced in the Senate a bill entitled “A bill for the relief of Secor and Company, Perine, Secor and Company, and the executors of Zeno Secor.” The bill authorized the submission to this court of the claims of the parties named, for further compensation for the construction of the Tecumseh, Mahopac, Manhattan, and Mohongo, authorized this court to hear and determine said claims and render judgment on the same and provided a basis of adjudication. The bill was referred to the Senate Committee on Claims, which made a report, and on May 28, 1900, by resolution of the Senate, that bill was referred to this court under the act of March 3, 1887, and became in this court No. 10264 congressional. That case was dismissed by the court on defendant’s motion June 6, 1910, on the ground that the reference of such a bill conferred no jurisdiction on this court. On April 25, 1904, a bill then pending in the Senate entitled “A bill for the relief of James F. Secor, surviving partner,” and providing for the payment to James F. Secor, surviving partner of Zeno Secor and Francis Secor and Win. Perine,” of the sum of $330,000, in full payment for the increased cost of the monitors Mahopac, Manhattan, and Tecumseh, was referred to this court under the act of March 3, 1887 (the Tucker Act), and became in this court No. 11385 congressional. This case was dismissed by the court on motion of the defendant June 17, 1918, under the Crawford amendment.
With the attempted reference by the Secretary of the Navy no claim was transmitted. In said reference he re-férs to a suit then pending in this court “No. 10269, con *100 gressional,” for extra work and changes in plans and specifications during the building of the Mahopao, Manhattan, Tecumseh, and Mohongo. No. 10269, congressional, was not then pending in this court. That case involved the claim of the estate of one Samuel J. Jones and had been theretofore disposed of. Presumably the Secretary of the Navy intended to refer to No. 10264, congressional. So far as may be determined from the record, and that seems to be the theory of plaintiff’s counsel, the claim pending in the Navy Department at the date of the attempted reference, if there was any claim pending, was the unallowed portions of the claim transmitted to the Secretary of the Navy by Secor & Co. and Ferine, Secor & Co. on June 1, 1867, referred to, considered by, and reported on by the Marchand Board in the report transmitted by the Secretary to the Senate, December 4, 1867, and made the basis, so far as these claimants were concerned, of the act of July 13, 1868. There was correspondence between these contractors and the Navy Department after the report of the Marchand Board had been transmitted to the Senate and. before the date of the attempted reference to this court, and other elements or bases of claim may have been thus attempted to be injected during this period, but it must be concluded that the claim then pending, if one was pending, was the unallowed portion of the claim referred to. This, we take it, is the contention of plaintiff’s counsel, who asserts that the claim, referring to this claim, was still undisposed of by the Secretary of the Navy because he had never exercised the powers conferred upon him by the act of March 2, 1867, and that if there are items now presented which were not set out in that claim, they are within the jurisdiction of the court “if they arise from the same cause of complaint.”
Whether there were subsequent items does not seem to be material, but the conclusion is justified that there were none such. The testimony of James F. Secor taken in the congressional cases referred to above at various times from 1900 to 1904, inclusive, and bi’ought into this case for consideration as if taken herein, is the only testimony for the plaintiff which considers the claim in detail. It appears from his testimony that the itemized account or claim relied *101 upon and with reference to which he testifies, and made a part of his testimony as an exhibit, was made up from original accounts which had been theretofore rendered to tho Government, namely, an account rendered in 1863 to the Gregory Board, the account, of June 1, 1867, rendered to the Secretary of the Navy and referred to the Marchand Board, and the account of 1869, rendered to the Boggs Board, and that no item is contained in the account with reference to which he testifies that was not included in one of the preceding accounts. The account rendered to the Boggs Board in 1869 was limited in its scope and was allowed in the full amount claimed except for a slight clerical mistake of a few cents, and is therefore eliminated. The next preceding account was the account of June 1, 1867, which was general in its character as to the whole transaction. It must follow that if any claim was pending in the Navy Department at the time of the attempted reference it was, so far as appears from the record, the unpaid part of the claim of June 1,1867.
The status of the parties plaintiff may not be material to the present consideration to the same extent that it would be if the case was being considered upon its merit for judgment, but for some purposes should be referred to in this connection. Statement has been made already as to the parties who executed individually the three contracts here involved and as to the parties plaintiff in whose names the first petitions were filed. As the case now presents itself it was at least peculiar that under an assumed reference of the claim of James F. Secor, surviving partner, petitions were filed in the names of the administrator of the estate of Francis Secor and the administratrix of the estate of Zeno Secor and so remained for more than two years and until after a motion to dismiss upon the ground, among others, that it did not appear that James F. Secor had any interest in the claim. Although the contracts in two instances were executed individually by Francis Secor and Zeno Secor and in the other instance by Wm, Perine, Francis Secor and Zeno Secor, the Government seems, by its correspondence and its allowances and payments, to have recognized Secor & Co. and Perine, Secor & Co. as the contractors, but aside from the testimony of James F. Secor *102 himself, supplemented to a limited extent by the testimony of bis son, who, after his death, became one of his executors, Are are not furnished with any proof as to the constituency of this presumably partnership, or of the interest of James F. Secor therein.
As to Secor & Co., he testifies that the partnership, first formed in 1847 by Avritten articles of copartnership, Avas composed of his father, Francis Secor, his two brothers, Zeno Secor and Charles A. Secor, and himself, under the firm name of Charles A. Secor & Co., but that it Avas sometimes called Secor & Co.; that his father, Francis Secor, died in 1864, but that he had retired from the firm before any of the contracts Avitli the GoA-ernment were entered into, and that the business was thereafter conducted by his íavo brothers and himself, each having a one-third interest therein. Zeno Secor died in 1875 and Charles A. Secor died in 1884. As to Perine, Secor & Co., he testifies that the firm was composed of Wm. Perine, his brothers, Charles A. and Zeno Secor, and himself, that Wm. Perine retired from the firm on September 15,1862, the date the contract for the building of the Manhattan was executed, and that he and his tAvo brothers succeeded to the interest of Perine and Avere equal partners in the business. As to these contracts, he testifies that they were nominally made in the names of the individual members of the firm, “ according to the Goa--ernment requirements,” but he makes no explanation as to why, under such circumstances, he does not appear as one of the contractors or Iioay it happens that they were signed by Francis Secor, Avho, according to his testimony, had theretofore retired, and why they were not signed by Charles A. Secor. If we were considering the rendering of a judgment we might well question whether the testimony of James F. Secor himself, under all the circumstances, Aras sufficient to establish his interest in the firm and authorize his appearance as a surviving partner. As tending rather to add to the confusion than otherwise', we are told by counsel in argument that James F. Secor was a silent partner. But aside from this view of the matter and of some materiality to the present consideration is the fact that the Secretary of the Navy, on February 8, 1906, undertakes to refer *103 the claim of James F. Secor, surviving partner of the firm of Secor & Co., when the record shows that James F. Secor died in December, 1904.
We come now to the specific question as to whether under the attempted reference by the Secretary of the Navy this court has jurisdiction to determine these cases.
The reference is specifically under section 1063, Revised Statutes. References to this court have been made by heads of executive departments in a variety of cases and under different statutory provisions. We have now section 148 of the Judicial Code, but with that or its effect on former provisions we are not concerned. Before its enactment there was section 1063, Revised Statutes, the Bowman Act of 1883 and the Tucker Act of 1887. In The New York Case, 160 U. S., 598, the Supreme Court considered in detail the effect of each of the subsequent acts on its predecessors, and held that, notwithstanding the Bowman and Tucker Acts, there was a distinct field of operation for section 1063.
It is settled by decisions, and so far as we know, not controverted, that in such a proceeding the court acquires jurisdiction, if at all, by virtue of the reference and not by reason of any subsequent filing in this court of a petition by the claimant. Lippitts Case, 14 C. Cls., 148; Armstrong et al. v. United States, 29 C. Cls., 148. Petitions are required under the rules of this court and for manifest reasons.
The form of the attempted reference is for consideration. We should deal perhaps with substance rather than form, but whatever term we use it is the reference itself that we consider. It refers “the claim made against the Government by James F. Secor, surviving partner of Secor & Co.,” and it informs us that James F. Secor claims to be such surviving partner and refers to Secor & Co. as “ contractors for building certain vessels for the Navy during the War of the Rebellion.” No claim is any more specifically described than as above stated and no claim is transmitted. The indefinite reference to Secor & Co. as contractors for the building of certain vessels for the Navy during the War of the rebellion could not direct the attention of the court to the particular claims presented by the petitions herein, *104 since it appears from the record that this firm built other vessels for the Navy during the rebellion. The reference to a pending congressional case, even if we correct the assumed error in the number, can not be of any help in identifying the claim attempted to be transmitted with those presented by the petitions herein, since the congressional case included claims with reference to another vessel, the Mohongo, which is not involved in the claims made by the petitions and was not involved in the claim which we have determined must have been the only claim, if any, which could have been pending in the Navy Department.
No “vouchers, papers, proofs, and documents pertaining thereto ” are transmitted as contemplated by the statute, but the court is informed that “if further information and papers .are desired the same will be furnished as promptly as practicable after the receipt of a request therefor ” leaving the court to determine, not only what the claim transmitted is, but what papers, such as those contemplated by the statute, the Navy Department may possess and the court may desire to have furnished. If the Secretary of the Navy by his reference to a congressional case then pending in this court assumed thereby to identify the claim which he was referring it may be questioned why he should assume to refer to this court for adjudication a claim already referred by Congress. The statute clearly contemplates the reference of a specific claim, which should be so identified and stated that there need be no doubt about what it is intended to refer. The fact that so much consideration has been given and must have been given by us to the determination of the question as to what claim, if any, was then pending before the Navy Department is indicative of the indefinite charac-tér of the attempted reference. We question seriously whether it was sufficient for any purpose, but the determination of that question is not controlling. We have been able to determine what claim, if any, was then pending in the Navy Department and we consider the question further upon the assumption that it was that claim which it was attempted to refer.
We have suggested the rule that this court acquires jurisdiction by virtue of the reference and not otherwise *105 and with that must be coupled the equally ivell-established rule that the reference can only be of a claim of which the department has jurisdiction; that is, a claim which the department may properly consider and, if found correct, may allow. Authorities upon this question will be cited after we have given brief attention to facts material to their application.
Proceeding upon the assumption that the only claim then pending in the Navy Department which could have been the subject of the assumed reference was the claim transmitted by Secor & Co. and Perine Secor & Co. on June 1, 1867, to the Secretary of the Navy and by him referred to the Mar-chand Board, and acted and reported upon by that board, we have for consideration the effect of the subsequent transmission of that report by the Secretary of the Navy to the Senate and the passage by Congress of the act of July 13, 1868. Here we are met by a contention of counsel that the Secretary of the Navy never exercised the powers conferred upon him by the act of March 2, 1867, that that statute had not called for the appointment of a board to consider the matter and that the Secretary of the Navy in transmitting the report of the Marchand Board had not expressed his approval or disapproval thereof. It is true that the act of March 2, 1867, directed the Secretary of the Navy to make the investigation contemplated thereby and did not specifically authorize the appointment of a board, but to contend that the Secretary of the Navy did not act in that matter, because he did not personally make the detailed investigation, but selected a, naval board to make it for him, borders upon absurdity, in view of established practice and a recognized necessity in such a case. It is a matter of frequent occurrence that Congress directs heads of departments to make certain investigations or to do specific things or to report certain matters to Congress, and it is a matter of common knowledge that the personal discharge of such duties thus assigned to heads of departments is an impossibility. It is always understood that they must operate in matters of detail through subordinates who proceed under their direction and it can not be otherwise.
*106 It approaches equally near to the domain of absurdity to say that the Secretary of the Navy never approved or disproved the report of the Marchand Board because he did not in specific terms say so. We have set out the communication which the Secretary of the Navy sent to the Senate with this report. He therein states that in order to comply with the requirements of the act it was necessary to convene a board of officers to examine the claims presented, a self-evident fact, and he says “their report is herewith transmitted ” thus complying, he inferentially says, with the requirements of the act. It is beyond reason to assume that he would transmit a report which did not meet with his approval arid which he did not adopt as his own act in discharge of the duty assigned, but if there could be any possibility of doubt upon this question Congress effectually settled it by its own declarations in the act of July 13, 1868. By said act it directed the payment to Secor & Co. and Perine Secor & Co. of the exact sum of money found due them by the report of the Marchand Board and refers to that amount, with others, as the amount found due by the Secretary of the Navy under the act of March 2, 1867, and Congress clearly regarded the transmission by him of the report of the Marchand Board as a discharge of his duty thereunder.
Having, in the last act referred to, directed the payment to these contractors of the amount found due them by the report of the Marchand Board, Congress further provided that the amounts directed by that act to be paid “ Shall be in full discharge of all claims against the United States on account of the vessels upon which the board made the allowances, as per their report, under the act of March two, eighteen hundred and sixty-seven.” The vessels involved in this case were among the vessels upon which the Marchand Board made allowances and were the vessels upon which that report had allowed the amount directed by the act to be paid to Secor & Co. and Perine Secor & Co., and when Congress inserted in that act the language last above quoted it seems beyond question that there was then no power remaining in the Secretary of the Navy, or anyone else, for that matter, to make any further allowance on account of the construe *107 tion of those vessels, until Congress, if it saw fit, should authorize it to be done. It is very strange indeed that a little more than a year after the passage of that act the Secretary of the K avy appointed another board to consider a claim of these contractors for an additional allowance on account of the construction of these same vessels and approved a report of that board recommending a further payment of $93,117.22 and specifically directed the payment to them of that sum.
But with this action on the part of the Secretary of the Navy we have nothing now to do except to say that it could not serve in any manner to affect the prohibition contained in the act of 1868, and could not by virtue of his assumption of jurisdiction vest in him a jurisdiction which he clearly did not have.
We are told that Congress did not intend to put up the bars against any further claims on account of the construction of these vessels because it thereafter by special acts made some payments on some of them and referred to this court a bill providing for further payments to Secor & Co. and Perine, Secor & Co. on account of these vessels. Whatever Congress did in that respect it, and it only, had a right to do, but it never directly or by implication authorized the Secretary of the Navy to make any further payment on account thereof and he never at any time after the passage of the act of 1868 had jurisdiction so to do.
In the Armstrong Case, 29 C. Cls. 148-169, holding that the transmission of a claim by the head of a department which he had no power to settle and pay confers no jurisdiction on the court, earlier cases are cited, and there are further citations in support of the rule in the White Earth Case, 50 C. Cls. 19-31. That the court can acquire no jurisdiction by virtue of a departmental reference unless the transmitting department had jurisdiction would seem to be almost self-evident.
The petitions herein must be dismissed.
Hay, Judge, Booth, Judge, and Campbell, Chief Justice, concur. Barney, Judge, did not participate.